**William RIVOT–SANCHEZ, Plaintiff,**

v.

**WARNER CHILCOTT COMPANY, INC., Defendant.**

**Civil No.: 07–2148 (DRD).**

United States District Court, D. Puerto Rico.

March 31, 2010.

Anibal Escanellas–Rivera, Maria T. Juan–Urrutia, Escanellas & Juan, San Juan, PR, for Plaintiff.

Carl E. Schuster, Lourdes C. Hernandez–Venegas, Zahira Diaz–Vazquez, Schuster & Aguilo LLP, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL HISTORY

The instant case involves claims of discrimination and failure to accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.*, along with several claims arising under the laws of Puerto Rico, over which this Court exercises supplemental jurisdiction. Currently before the Court is Defendant's *Motion for Summary Judgment* (Docket No. 36), filed on May 15, 2009, which Plaintiff opposed (Docket No. 45) on June 22, 2009. Subse-quently, Defendants filed a reply to Plaintiff's opposition (Docket No. 48) on July 1, 2009 and Plaintiffs filed a sur-reply (Docket No. 54). Additionally, Defendants filed a motion to strike related to an exhibit submitted by Plaintiff in support of his opposition to the motion for summary judgment (Docket No. 50).

The Court referred the instant motion to Magistrate Judge Bruce McGiverin on October 15, 2009 (Docket No. 56), and he entered a *Report and Recommendation* (Docket No. 59) on March 1, 2010. Plaintiff filed his objections (Docket No. 60) to the *Report and Recommendation* on March 8, 2010 and Defendant responded to these objections on March 18, 2010 (Docket No. 61).

In his *Report and Recommendation,* the Magistrate Judge recommended that Defendant's motion for summary judgment be granted as to the federal claims, and that the claims arising under the law of Puerto Rico be dismissed without prejudice. Specifically, the Magistrate Judge found that Plaintiff failed to make out a *prima facie* case of discrimination based on actual disability claim under the ADA as Plaintiff failed to show that he was substantially limited in any major life activity. Additionally, the Magistrate Judge found that Plaintiff failed to raise a claim based upon a theory that he was "regarded as" disabled until his opposition to the motion for summary judgement and, as a result, should be barred from arguing this claim. Further, the Magistrate Judge found that, even if Plaintiff had raised this theory previously, his claim bears no merit as it fails to meet the heightened level of specificity for a "regarded as" claim. Likewise, the Magistrate Judge found that Plaintiff raised his hostile work environment claim for the first time in his opposition and that, therefore, this claim should also not be entertained. The Magistrate

Judge further found that, even if the Court were to address this claim on the merits, the same should be dismissed as Plaintiff has not introduced sufficient evidence to establish that Defendant's proffered reason for dismissing Plaintiff was pretextual.

The Magistrate Judge also addressed Defendant's motion to strike (Docket No. 50) in his *Report and Recommendation.* First, the Magistrate Judge concluded that Defendant's argument that the Rivot Statement ("the Statement") (Docket No. 45–3) should be stricken as a violation of the discovery rules under Rules 26(a) and 26(e) to be "misplaced" as the Statement did not exist during the discovery period. The Magistrate Judge also analyzed Defendant's assertions that the Statement was a "sham affidavit" and ultimately recommended that the Court strike certain portions of the Statement that directly contradicted Plaintiff's previous deposition testimony. The Magistrate Judge particularly emphasized that Plaintiff's counsel failed to correct or clarify the previous deposition testimony and that the contradictory Statement was executed after Defendant had filed its motion for summary judgment. Finally, the Magistrate Judge analyzed Defendant's arguments that portions of the Statement were hearsay, concluding that Defendant's arguments were not meritorious.[1]

In *Plaintiff's Objections to the Report and Recommendation* (Docket No. 60), Plaintiff did not object to the Magistrate Judge's determination that Plaintiff is not a disabled individual under the ADA. Thus, Plaintiff did not object to the Magistrate Judge's recommendation that the Court dismiss his causes of action for harassment, discrimination based upon disability and his request for reasonable accommodation.[2]

1. As no objection has been filed to the Magistrate Judge's conclusions regarding the Rivot Statement, the Court reviews the Magistrate Judge's findings for "plain error" and finds none as a party may not directly contradict previous unambiguous testimony to create a conflict of fact in order to resist a motion for summary judgment. *See Colburn v. Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 332 n. 3 (1st Cir.2005); *see also Rivera–Rocca v. RG Mortgage Corp.,* 535 F.Supp.2d 276, 285 (D.P.R.2008) Accordingly, the Court adopts the Magistrate Judge's findings and **GRANTS IN PART AND DENIES IN PART** the motion to strike the Rivot Statement for the reasons which were extremely well elaborated with meticulous attention to the facts within the Magistrate Judge's *Report and Recommendation.*

2. The Magistrate Judge carefully elaborated the factual scenario as to Plaintiff's substantive claims of discrimination under the ADA for discrimination based on disability and entered an extremely well-reasoned recommendation containing a restatement of precedent detailing how to prove the claim under either a theory of actual disability or a "regarded as" disabled theory via either direct proof of a *prima facie* case or via the *McDonnell Doug-*

*las* burden-shifting framework. *See e.g. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Jacques v. Clean–Up Grp., Inc.,* 96 F.3d 506, 511 (1st Cir.1996)(discussing the manner in which a court should analyze direct and indirect proof of discrimination claims under *McDonnell Douglas* and 42 U.S.C. § 12102, as well as "regarded as" disabled claims). The Magistrate Judge correctly determined that Plaintiff failed to comply with the standard of *Toyota Motor Mfg. Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), by failing to satisfy that the Hepatitis C from which he suffered constituted a substantial limit to a major life activity. Particularly, the Magistrate Judge found that Plaintiff was not substantially limited in a broad range or a class of jobs. *See Bailey v. Georgia–Pacific Co.,* 306 F.3d 1162, 1167 (1st Cir.2002). The Magistrate Judge further found that the 2008 ADA amendments could not be retroactively applied to the instant facts, which occurred prior to their enactment. *See Thornton v. United Parcel Service, Inc.,* 587 F.3d 27, 34 n. 3 (1st Cir.2009). Additionally, the Magistrate Judge correctly barred Plaintiff's "regarded as" theory as that theory was not presented nor

Accordingly, Plaintiff's only objection is to the Magistrate Judge's determination that Plaintiff failed to demonstrate that Defendant's reasons for terminating Plaintiff were pretextual. In support of this objection, Plaintiff re-hashes the factual arguments which he previously made in opposition to the motion for summary judgment, concluding that he had, in fact, presented the Court with sufficient facts to find pretext and that, thus, the Magistrate Judge's recommendation that the Court grant summary judgment on this claim was incorrect.

In *Defendant's Opposition to Plaintiff's Objections to the Report and Recommendation* (Docket No. 61), Defendant first asserts that Plaintiff's objections relate solely to the Magistrate Judge's factual and legal conclusions[3] pertaining to Plaintiff's retaliatory discharge claim. Defendant then asserts that, as the Magistrate Judge found, the factual allegations pro-

pounded by Plaintiff are insufficient to raise any triable facts regarding the allegedly pretextual nature of the reason given for Plaintiff's dismissal. Specifically, Defendant argues that the close temporal proximity between the service of process in the instant case and his termination is insufficient to establish retaliatory animus. Further, Defendant asserts that Plaintiff failed to create a genuine issue of material fact regarding his failure to comply with Defendant's attendance policy.

Upon a thorough review of the record, the Court finds that the Magistrate's findings of fact, as well as the conclusions drawn therefrom are correct. Accordingly, the Court hereby adopts and incorporates by reference the Magistrate's *Report and Recommendation in toto*, **GRANTING** Defendant's *Motion for Summary Judgment*. The Court elaborates below only in order to address the sole challenge to the excellent *Report and Recommenda-*

---

developed until Plaintiff opposed Defendant's motion for summary judgment; the Magistrate Judge further found that, analyzing this theory on the merits, Plaintiff had failed to reach the required heightened statutory threshold of 42 U.S.C. § 12102(3)(a). The Magistrate Judge's analysis correctly states and applies the precedential and current case law regarding the merits of the instant case and this Court will not restate the excellent work of the Magistrate Judge only to hear its own words resonate. *See Vega–Morales v. Commissioner of Social Security*, 380 F.Supp.2d 54, 60 (D.P.R.2005) (*quoting Lawton v. State Mut. Life Assu. Co. of Am.*, 101 F.3d 218, 220 (1st Cir.1996); *and In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir.1993)). Lastly, the Magistrate Judge recommended that the Court dismiss Plaintiff's untimely claim of a hostile work environment, stating that it was procedurally barred and, further, would fail on the merits. Thus, the Court reviews the Magistrate Judge's recommendations regarding all of Plaintiffs' substantive ADA claims, other than the retaliation claim, for "plain error" and, finding none, shall adopt the Magistrate

Judge's *Report and Recommendation* as to these claims.

3. Defendant aptly summarizes Plaintiff's specific arguments as follows:

(1) close temporal proximity between the service of process of the Complain in the case at bar and plaintiff's termination from employment; (2) that on March 24, 2008, plaintiff called WC's dispensary and Ruth Torres ("Torres"), WC's Occupational Nurse, allegedly told him that she was going to contact Rivot's immediate supervisor to inform her about Rivot's accident and his absence; (3) that on March 28, 2008, supposedly he handed a copy of his x-ray results to Eric Betancourt ("Betancourt"), and officer from WC's Human Resources Department; (4) that WC failed to follow its policy of meeting with an employee prior to a disciplinary action; and (5) that prior to his termination, Rivot had not been disciplined for failing to communicate with his immediate supervisor on a daily basis, upon an absence.

Docket No. 61 p. 2.

*tion,*[4] the claims of retaliation under the ADA made by Plaintiff.

## II. REFERRAL TO MAGISTRATE JUDGE

 The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* FED.R.CIV.P. 72(b); Local Rule 72(a); *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections. *See* FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> [A]ny party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985), *cert denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to re-

view in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *see also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Borden v. Sec. of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). The Court, in order to accept the unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir.1996) *(en banc )*(extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982) (en banc)(appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); *see also Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether

---

4. The Court finds that the Magistrate Judge's *Report and Recommendation* exhaustively addresses through proper and well-documented facts and by well-reasoned conclusions of law all of Plaintiff's claims.

 The Court need not go further for it refuses to write at length to no other end than to hear its own words resonate as to the instances alleged as errors by plaintiff.

> Where, as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate.

*Vega–Morales,* 380 F.Supp.2d at 60 *(quoting Lawton v. State Mut. Life Assu. Co. of Am.,* 101 F.3d 218, 220 (1st Cir.1996); *and In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993)).

or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED. R.CIV.P. 72(b)); *see also Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa., 1990) (finding that "when no objections are filed, the district court need only review the record for plain error"). Because Plaintiff timely filed an opposition to the Magistrate's *Report and Recommendation,* the Court will review *de novo* only the objected-to portions as the Court has already determined that the un-objected to portions of the *Report and Recommendation* do not contain any "plain error."

## III. SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico,* 110 F.3d 174, 179 (1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 959–60 (1st Cir.1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir. 2000) (finding that "determinations of motive and intent ... are questions better suited for the jury"). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–*

*Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 97 (1st Cir.1996).

## IV. FACTUAL BACKGROUND

When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *See Cadle Co.,* 116 F.3d at 959–60. The Court will not consider hearsay statements nor allegations presented by parties that do not properly provide specific reference to the record. *See* L.Civ.R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also A.C. Orssleff's EFTF,* 246 F.3d at 33 (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *see also Garside v. Osco Drug,* 895 F.2d 46, 50 (1st Cir.1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").

Here, neither party has objected to the Magistrate Judge's findings of fact; rather, Plaintiff only opposes the Magistrate Judge's application of fact to the standard for retaliation and the conclusions which the Magistrate Judge reached upon a review of the facts as applied to this standard. Accordingly, and after a review of parties' filings in comparison with the Magistrate Judge's *Report and Recommendation,* the Court finds that the Magistrate Judge's account of the facts is accurate. Thus, rather than repeating the lengthy set of facts that pertain to the instant case in their entirety, the Court hereby adopts and incorporates by reference the Magistrate Judge's exhaustive findings of fact *in toto,* noting particularly that they remain unchallenged.

## V. ADA CLAIMS

Under the Americans with Disabilities Act, employers are generally prohibited from discriminating against qualified persons with disabilities in the workplace. *See* 42 U.S.C. § 12112(a). Specifically, the statute provides that employers shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees and other terms, conditions, and privileges of employment." *Id.* For the purposes of interpreting this statute, "discriminate" includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The statutory meaning of "disability" under the ADA is "(1) a physical or mental impairment that substantially limits one or more of a person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment." *Sanchez–Figueroa v. Banco Popular de P.R.,* 527 F.3d 209, 214 (1st Cir.2008).

The actual "existence of a disability [must] be determined in ... a case-by-case manner" for the purposes of fulfilling the requirements of the first definition of "disability" under the ADA. *Toyota,* 534 U.S. at 198, 122 S.Ct. 681. Accordingly, "[w]hether a person has a disability under the ADA is an individualized inquiry." *Bailey v. Georgia–Pacific Corp.,* 306 F.3d at 1167 (internal quotations omitted). The Supreme Court has established that having an impairment is, in itself, insufficient to warrant protection under the ADA. *Toyota,* 534 U.S. at 198, 122 S.Ct. 681. A plaintiff must also show that the impairment has a substantial effect on a major

life activity. *Id.* Accordingly, evidence of an impairment which is supported only with a medical diagnosis or conclusory assertions of disability by a physician are insufficient to show disability for the purposes of the ADA. *See id; Whitlock v. Mac–Gray, Inc.,* 345 F.3d 44, 46 (1st Cir. 2003) (citing *Toyota,* 534 U.S. at 198, 122 S.Ct. 681). Rather, a plaintiff must submit "evidence that the extent of the limitation caused by [her] impairment in terms of [her] own experience is substantial." *Toyota,* 534 U.S. at 198, 122 S.Ct. 681. "A substantial limitation cannot include any impairment which interferes in only a minor way with the performance of manual tasks, and the phrase major life activities refers only to those activities which are of central importance to daily life." *Benoit v. Tech. Mfg. Corp.,* 331 F.3d 166, 176 (1st Cir.2003). Although working may be considered a major life activity, in order to be considered disabled, plaintiff must show that she is "precluded from more than the performance of a particular job." *Guzman–Rosario v. United Parcel Service, Inc.,* 397 F.3d 6, 11 (1st Cir.2005). Rather, plaintiff must make the "weighty showing" that she "is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Bailey,* 306 F.3d at 1168 (quoting 29 C.F.R. § 1630.2(j)(3)(i))(internal quotation omitted). In order to fulfill the requirements of the second definition of "disability" under the ADA, plaintiff must show that she has a "record" of "disability," which is defined as having a "history of, or [having] been misclassified as having, an impairment that substantially limit[s] a major life activity." *Id.* at 1169.

█ The Supreme Court has stated that there are two ways in which a plaintiff may fulfill the statutory requirement for being "regarded as" having an impairment where he can not fulfill the requirements of either the first or the second definitions of "disability." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Either "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Id.* Accordingly, "A plaintiff claiming that he is regarded as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." *Bailey,* 306 F.3d at 1169. Thus,

> [i]n order to establish a [discrimination] claim under the ADA, a plaintiff must prove the following three elements by a preponderance of the evidence: first, that she is ***disabled within the meaning of the ADA*** ... second, that with or without reasonable accommodation she was a qualified individual able to perform the essential functions of the job; and third, that the employer discharged her because of her disability.

*Mulloy v. Acushnet Co.,* 460 F.3d 141, 145–46 (1st Cir.2006) (internal quotations and citations omitted)(emphasis ours). Where, as here, a plaintiff can not prove this prima facie case directly, *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, provides the plaintiff an opportunity to prove his case indirectly. *See Jacques,* 96 F.3d at 511. Under the *McDonnell Douglas* framework,

> a plaintiff must first prove by the preponderance of the evidence that he or she (i) ***has a disability within the meaning of the Act;*** (ii) is qualified to perform the essential functions of the

job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result.

*Jacques*, 96 F.3d at 511 (emphasis ours); *see also Orta–Castro v. Merck, Sharp & Dohme Química P.R., Inc.*, 447 F.3d 105, 111 (1st Cir.2006). When opposing a properly supported motion for summary judgment, a plaintiff bears the burden of establishing each of the elements of the ADA prima facie case of discrimination, including the existence of disability. *See Bailey*, 306 F.3d at 1166.

■ As in the ADA discrimination claim outlined above, the prima facie case of failure to accommodate under the ADA requires that the plaintiff show that she is a *qualified individual with a disability under the meaning of the ADA. Orta–Castro*, 447 F.3d at 112. Further, a plaintiff must show that the employer knew of the plaintiff's limitations and failed to accommodate them. *Id.* Finally, the employer's failure to accommodate must have affected the terms, conditions or privileges of the plaintiff's employment. *Id.* Thus, the requirement of "disability" is paramount under both the discrimination and failure to accommodate claims created by the Act.

In the instant case, Plaintiff has not objected to the Magistrate Judge's findings that his claims of discrimination based upon actual disability, discrimination based upon a finding that Plaintiff was "regarded as" disabled, failure to accommodate, and hostile work environment do not bear genuine issues of material fact and should be dismissed. Thus, the Court reviews the Magistrate Judge's findings and conclusions as to these claims for plain error.

First, as to Plaintiff's claim of discrimination based upon actual disability and the related failure to accommodate claim, the Court finds that the Magistrate Judge was correct when he found that Plaintiff neither alleged nor supported a finding of disability as he did not allege or show that he was substantially limited in any of the three life activities identified in his amended complaint. Thus, the Court adopts and incorporates the Magistrate Judge's decision to **GRANT** Defendant's motion for summary judgment as to Plaintiff's claims of discrimination based upon actual disability and failure to accommodate said disability. *See supra* n. 2.

Additionally, upon a review of the filings in the instant case, the Court agrees with the Magistrate Judge's determination that Plaintiff raised his "regarded as" claim for the first time in his opposition to the motion for summary judgment, despite being granted the opportunity to amend his complaint in the instant case. As this violates the principle that a defendant possesses an "inalienable right to know in advance the nature of the cause of action being asserted against him," the Court agrees with the Magistrate Judge's determination that Plaintiff may not argue this new theory at this late hour. *See Ruiz Rivera v. Pfizer Parms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotation omitted). Further, the Court agrees with the Magistrate's determination that Plaintiff, even in this late attempt to raise a "regarded as" claim, has failed to cite any evidence relevant to the issue of whether Defendant regarded Plaintiff as disabled. Thus, the Court adopts the Magistrate Judge's *Report and Recommendation* as to Plaintiff's "regarded as" claim and **DISMISSES** this claim. *See supra* n. 2.

The Court now turns to Plaintiff's hostile work environment claim. Upon a review of the relevant filings in the instant

case, the Court agrees with the Magistrate Judge's determination that Plaintiff made no citations to the record to bolster his bald hostile work environment claims. Accordingly, the Court agrees with the Magistrate Judge's determination that "[t]his is insufficient to defeat summary judgment and violates Local Rule 56(e)." *See Matias–Cardona v. Verizon Wireless P.R., Inc.,* 610 F.Supp.2d 157, 170 (D.P.R.2009). The Court therefore finds that summary judgment as to Plaintiff's hostile work environment claim is appropriate under the Local Rules and First Circuit case law. *See* L.CIV.R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate). Accordingly the Court hereby **GRANTS** Defendant's motion to dismiss as to Plaintiff's hostile work environment claim. *See supra* n. 2.

## VI. RETALIATION UNDER THE ADA

▮▮▮▮ The ADA contains an anti-retaliation clause which states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge ... under this chapter." 42 U.S.C. § 12203(a). In order to set forth a *prima*

facie case of retaliation under the ADA, the "plaintiff must show: (1) that he engaged in protected conduct, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action." *Carreras v. Sajo, Garcia & Partners,* 596 F.3d 25, 35 (1st Cir.2010). Once a plaintiff makes this *prima facie* showing "of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision." *Id.* at 36 (internal quotation omitted). The First Circuit has clarified that "[t]he [defendant] employer's burden is one of production [or articulation], not persuasion." *Id.* (internal quotation omitted). Thus, once the "employer produces a legitimate reason for its decision," the burden shall shift back to the plaintiff to "show that the motive was" retaliatory. *Id.* (internal quotation omitted). "Thus, the plaintiff bears the ultimate burden to create a plausible inference that the employer had a retaliatory motive." *Id.*

As Plaintiff only opposes certain of the Magistrate Judge's conclusions drawn from the undisputed facts of the instant case, the Court shall focus its inquiry on the disputed portions of the Magistrate Judge's analysis. Plaintiff does not dispute the Magistrate Judge's finding that he presented a *prima facie* showing of retaliation. Thus, upon review of the Magistrate Judge's findings, as well as the record, the Court finds that Plaintiff has made the "small showing" necessary to shift the burden to Defendant to articulate a legitimate and non-retaliatory reason for its employment decision.[5] *See Kosereis v.*

---

5. As stated by the Magistrate Judge in his *Report and Recommendation,*

The Fist Circuit has analogized the ADA ... to the Title VII context in retaliation causes of action. *Arocho v. Dep't of Labor and*

*Human Res.,* 218 F.Supp.2d 145, 148 (D.P.R.2002). To establish a *prima facie* case of retaliation, a plaintiff must prove by a preponderance of the evidence that (1) he engaged in protected conduct; (2) he suf-

*Rhode Island,* 331 F.3d 207, 213 (1st Cir. 2003); *see also Calero–Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 26 (1st Cir.2004). Specifically, the Court wholly agrees with the Magistrate Judge's determination that Plaintiff presented a *prima facie* case of retaliation by termination for filing his complaint in the instant case as the time period between service of process and Plaintiff's termination was sufficiently short to raise an inference of causation.[6]

Accordingly, the Court's inquiry next focuses on whether Defendant has discharged the burden which shifted to it following Plaintiff's showing of a *prima facie* case of retaliation. Defendant's burden is simply to "articulate a legitimate, nondiscriminatory reason for its employment decision." *Carreras,* 596 F.3d at 35. Here, Defendant has established that Plaintiff failed to contact his supervisor during an absence from work which spanned the time period between March 24 and 28, 2008 and that this failure to contact his supervisor directly contravened Defendant's policies. Defendant further claims that Plaintiff failed to bring a medical certificate to the dispensary upon his return to work.[7] Ultimately, Defendant's overarching argument is that it dismissed Plaintiff as the result of Plaintiff's progressive discipline,[8] which was based on

---

fered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. *See Dressler v. Daniel,* 315 F.3d 75, 78 (1st Cir.2003); *see also Soileau v. Guilford of Me.,* 105 F.3d 12, 13 (1st Cir.1997) (applying the standard for retaliation suit under Title VII to retaliation suit brought under the ADA). Requesting an accommodation is protected conduct for purposes of the ADA's retaliation provision, as is complaining about a refusal to accommodate. *Wright v. CompUSA, Inc.,* 352 F.3d 472, 477–78 (1st Cir.2003); *Guzman–Rosario v. United Parcel Serv., Inc.,* 397 F.3d 6, 11 (1st Cir.2005). Docket No. 59 p. 32–33 (internal quotations omitted).

6. Specifically, the Magistrate Judge found that Plaintiff met the first element of the *prima facie* case by presenting evidence that he requested reasonable accommodation and complained to Defendant about the allegedly discriminatory acts taken against him. The Magistrate Judge also correctly found that Defendant conceded that Plaintiff's termination constituted an adverse employment action. Further, the Magistrate Judge determined that, although Plaintiff's showing of a *prima facie* retaliation case "falter[ed], but [did] not fail, on the causation element." Specifically, the Magistrate Judge found that, although Plaintiff failed to establish causation between several of the adverse actions which he claimed and his termination, the temporal proximity between service of the *Complaint* in the instant case and his termination, a period of two months and six days, was sufficient to raise an inference of causation. Docket No. 59 p. 33–36.

7. In his objections to the *Report and Recommendation,* Plaintiff alleges that a dispute exists regarding whether he returned with the medical certificate and x-ray on March 28, 2008 or March 31, 2008 creates a genuine issue of material fact in this step of the Court's analysis. The Court here notes, however, that the only evidence which tends to show that Plaintiff presented these items on March 28, 2008 is Plaintiff's own deposition testimony, which is contradicted by the date on the medical certificate itself as well as the deposition testimony of the issuing doctor. Defendant's overarching argument is that it dismissed Plaintiff due to the culmination of Plaintiff's progressive discipline, which was based on Plaintiff's previous reprimands, performance reviews and his failure to contact his supervisor when he was absent from work between March 24 and 28, 2008. As the Court bases its ultimate decision that Defendant has succeeded in shifting the burden back to Plaintiff upon this overarching account of Plaintiff's progressive discipline by Defendant, this one credibility determination is insufficient to show that a genuine issue of material fact exists, as other evidence supports this proposition, even without consideration of Defendant's argument that Plaintiff failed to turn in a medical certificate.

8. As the able Magistrate Judge explained, "Defendant ... has presented evidence that plaintiff's annual reviews showed a decline in

Plaintiff's previous reprimands, performance reviews and his failure to contact his supervisor when he was absent from work between March 24 and 28, 2008. Defendant asserts that Plaintiff's termination was the result of the previous disciplinary actions against him, in combination with Plaintiff's failure to follow Defendant's policy by contacting his supervisor during his absence. Although Plaintiff attempts to argue that material issues of fact exist as to whether the nurse represented to Plaintiff that she would tell Plaintiff's supervisor that Plaintiff was unable to work, this line of argument falls flat. Defendant does not emphasize Plaintiff's failure to notify his supervisor merely to establish that the supervisor had no knowledge that Plaintiff was unable to work due to his alleged injury; rather, Defendant points to Plaintiff's failure to properly notify his supervisor of the injury himself as the final event that led to Defendant's discharge of Plaintiff. Thus, Plaintiff has not established a genuine issue of material fact relating to this step of the Court's analysis and, accordingly, the burden must shift back to Plaintiff to demonstrate that Defendant's proffered reason for termination was merely pretext for discrimination. *See Calero–Cerezo,* 355 F.3d at 26; *see also Mesnick v. General Elec. Co.,* 950 F.2d 816, 827 (1st Cir.1991).

Plaintiff contests the Magistrate Judge's findings that Defendant's proffered reasons for his termination were pretextual. Plaintiff cites the assertion that he had previously never been disciplined for failing to contact his supervisor when he was unable to report to work, as well as the temporal proximity between the filing of the complaint in the instant case and his termination as his primary evidence of

pretext. Plaintiff also argues once again that Defendant failed to hold a meeting with Plaintiff prior to terminating his employment, in contravention of its own policies.

As well noted by the Magistrate Judge, the Court should find that an employer's failure to follow its own internal policies is *per se* insufficient to show pretext; rather, Plaintiff must show that he was treated differently. *See Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 346 (5th Cir.2007) (reaching this conclusion in a Title VII context). Further, the Court should not find that, where an employee establishes that he has not been previously disciplined for contacting nurses, rather than his supervisor, during previous absences, pretext for retaliation exists. *See id.; see also Dennis v. Osram Sylvania, Inc.,* 549 F.3d 851, 858–59 n. 7 (1st Cir. 2008). The Court can not draw from Plaintiff's arguments and supporting evidence a sufficiently plausible inference of retaliatory motive to discharge Plaintiff's burden. Accordingly, the Court finds that Plaintiff has not met his burden of demonstrating that Defendant's proffered reason for Plaintiff's dismissal was pretextual. Ultimately, the Court must find that Plaintiff has not met its final burden of showing that brevis disposition is not appropriate as to his claim of retaliation. Therefore, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's claim of retaliation.

## VII. STATE LAW CLAIMS

Finally, the Court dismisses without prejudice Plaintiff's supplemental state law claims. arising under the laws of Puerto

---

his job performance in several areas, including attendance; that he had been disciplined on multiple occasions for violations of [Defendant's] company policies and warned that fur- ther violations could result in his termination; and that plaintiff was familiar with the company's attendance policies." *Report and Recommendation* p. 37.

Rico. *See Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995) (finding that dismissal of supplemental state-law claims is appropriate where there is an "unfavorable disposition of a plaintiff's federal claims" before trial).

## VIII. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.** Accordingly all Plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE** The Court also **DISMISSES WITHOUT PREJUDICE** Plaintiff's supplemental state law claims arising under the laws of Puerto Rico. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION*

BRUCE J. McGIVERIN, United States Magistrate Judge.

Plaintiff William Rivot–Sánchez ("Rivot" or "plaintiff") brings this action against Warner Chilcott Company, Inc. ("WC" or "defendant") for damages arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and related claims under Puerto Rico law. Defendant filed a motion for summary judgment as to all claims (Docket No. 36), plaintiff opposed (Docket No. 45), defendant replied (Docket No. 48), and plaintiff filed a sur-reply (Docket No. 54). The presiding district judge referred the summary judgment motion and related motions, including defendant's associated motion to strike (Docket No. 50), to me for a report and recommendation. (Docket No. 56). For the reasons that follow, I recommend that defendant's unopposed motion to strike be granted in part and denied in part. I further recommend that defendant's motion for summary judgment be granted as to all claims under both federal and Puerto Rico law.

## I. FACTUAL BACKGROUND

The following material facts, which will be viewed in the light most favorable to plaintiff as the nonmoving party, are either undisputed or conclusively supported by the evidentiary record except where otherwise noted.[1]

### A. Warner Chilcott Company

Defendant Warner Chilcott Company manufactures products including oral contraceptives. (Dockets No. 36–2, ¶ 4; 36–9, ¶ 7). The two stages of production, manufacturing and packaging, are performed in separate buildings by different groups of employees. (Dockets No. 36–2, ¶ 4; 36–9, ¶¶ 7–8). Manufacturing employees work with active product, including hormones. (Dockets No. 36–2, ¶ 5; 36–9, ¶ 8). The Packaging Department is a two-floor building consisting of conveyor belts, packaging lines, printing and punching machines, and a separate room where employees package oral contraceptive pills in

---

1. In determining what facts are supported by the evidentiary record, I have applied Local Rule 56(e):

 Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

their final form. (Dockets No. 36–2, ¶¶ 5–6; 36–6, p. 8–14; 36–9, ¶ 8).

## B. Plaintiff's Employment with Warner Chilcott

Plaintiff Rivot began working for Pfizer Pharmaceuticals LLC on May 28, 2002, as a cleaner at Pfizer's plant in Fajardo, Puerto Rico. (Dockets No. 36–2, ¶¶ 1, 3; 36–4, p. 1; 36–5, p. 39; 45–3, ¶ 3). During his pre-employment medical exam with Pfizer, Rivot was preliminarily diagnosed with hepatitis C by Dr. Roberto López, Pfizer's plant physician at the time. Pfizer hired plaintiff as a regular employee despite the diagnosis. (Dockets No. 36–2, ¶ 2; 36–5, p. 37; 45–3, ¶ 4). In 2002 plaintiff was asymptomatic and could walk, see, talk, hear, work, perform household chores, breathe, perform manual tasks, eat, sleep, and drive his motorcycle. (Dockets No. 36–2, ¶ 2; 36–5, p. 38, 41–44). WC became plaintiff's successor employer when it acquired Pfizer's Fajardo plant on June 1, 2004. (Dockets No. 36–2, ¶ 1; 36–9, ¶ 4; 45–3, ¶ 3).

At all relevant times, plaintiff held the position of Cleaner and was assigned to work in the plant's packaging area, where his immediate supervisor was Elia Claudio, Packaging Supervisor.[2] (Dockets No. 36–2, ¶¶ 3, 7; 36–5, p. 15–17, 20; 36–8, ¶¶ 6–7; 36–9, ¶ 6). Plaintiff was also supervised by Rafael Rosa and William Cortés. (Docket No. 36–8, ¶ 7). Plaintiff's job as a cleaner included, *inter alia*, the following essential functions: (1) gathering and disposing of trash; (2) cleaning the floors, walls, and ceilings of the packaging areas and offices; (3) performing all other duties assigned by his supervisor; and (4) performing all his assigned duties in a manner consistent with WC's standard operating procedures ("SOPs"). (Dockets No. 36–2, ¶ 8; 36–11, § III; 43–3, § III). According to his own deposition testimony and affidavit, as a cleaner, plaintiff was responsible for gathering, shredding, and disposing of unused printed cardboard, packages, foils, and other waste from the machines in the Packaging Department. He was assigned to shred waste during his entire tenure as a cleaner, both under Pfizer and under Claudio after WC took over. (Dockets No. 36–2, ¶ 8; 36–5, p. 5–13; 45–3, ¶¶ 9, 37, 48).

Plaintiff also collected, shredded, and disposed of protective disposable "uniforms" on orders from his supervisor. (Dockets No. 36–2, ¶ 19; 36–6, p. 13–20; 45, ¶ 5; 45–3, ¶¶ 8–9). These garments are worn by employees working with hormones in the "controlled" areas of the Packaging Department; the employees leave the controlled areas through an "air lock" where they remove the protective garments and place the garments into trash bags[3] before exiting into non-controlled areas. (Dockets No. 36–2, ¶ 18; 36–6, p. 13–20; 36–9, ¶ 9). The air lock has negative air pressure that keeps out contamination from the controlled area, thus allowing employees to enter and exit controlled areas without risk of exposure. (Dockets No. 36–2, ¶ 18; 36–9, ¶ 9). The controlled area and air lock area were

---

**2.** As defendant notes, plaintiff repeatedly refers to Claudio as "Mrs. Espada." (*See* Dockets No. 45, 45–3, *passim*). As it is uncontroverted that plaintiff's supervisor was named Claudio (*see, e.g.*, Docket No. 36–5, p. 21), I will read "Espada" as "Claudio" in plaintiff's papers.

**3.** The parties disagree as to whether the trash bags were open or sealed. (*See* Dockets No.

36–2, ¶¶ 21, 23; 45, ¶¶ 18, 21; 45–3, ¶ 13). The second written reprimand issued to plaintiff on June 6, 2007, which pre-dates the instant litigation, states that the bags were sealed. (Dockets No. 36–17, p. 1; 43–7, p. 1). On summary judgment, I construe this fact in plaintiff's favor as the non-moving party. *See Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

installed in the Packaging Department in or around December 2006. (Dockets No. 36–2, ¶ 18; 36–9, ¶ 9).

## C. Plaintiff's Hepatitis C Condition; First Leave of Absence

Plaintiff testified that after diagnosing plaintiff with hepatitis C in 2002, Dr. López informed plaintiff that plaintiff could not be exposed to the hormones used in oral contraceptives such as those produced in the plant, as such exposure would have a negative impact on his hepatitis C condition. (Dockets No. 45, ¶ 3; 45–3, ¶ 5; 45–4, p. 20–22). According to plaintiff, Dr. López explained to him the different functions and duties that he could and could not perform, including the avoidance of any contact with hormones. (Dockets No. 45, ¶ 3; 45–3, ¶ 5; 45–4, p. 20–22). Plaintiff testified that Dr. López ordered plaintiff not to be exposed to the active products for the hormones, work in the conveyer line for packaging oral contraceptive pills, or handle products contaminated with hormones. (Dockets No. 45, ¶ 4; 45–3, ¶ 6; 45–4, p. 20–22).

On June 16, 2003, plaintiff began a nine-month course of medical treatment for hepatitis C with Dr. Evelio Bravo Fernández ("Bravo"), using PEG–Intron, ribavirin, and folic acid. (Dockets No. 36–2, ¶ 9; 36–5, p. 45–47, 51; 36–12, p. 2–5). During treatment, plaintiff could see, hear, talk, breathe, eat, and sleep, but could not work, take care of himself, or perform manual tasks. (Dockets No. 36–2, ¶ 10; 36–5, p. 47–51; 45–3, ¶ 10). According to Dr. Bravo, although plaintiff suffered from incapacitating depression during the treatment as a result of the PEG–Intron and ribavirin, plaintiff's hepatitis C was not incapacitating and plaintiff was not limited, nor did he complain of being limited, in his daily life activities, such as sitting, standing, walking, performing manual tasks, talking,

hearing, and seeing. (Dockets No. 36–2, ¶ 11; 36–12, p. 6–8; 45–6, p. 2–3). Dr. Bravo testified that during his treatment of plaintiff, from June 16, 2003 until June 19, 2008, he never instructed plaintiff to avoid being exposed to any specific product or substance due to his hepatitis C condition. (Dockets No. 36–2, ¶ 13; 36–12, p. 9–10).

On or around September 3, 2003, plaintiff expressed concern to Dr. López about how exposure to oral contraceptive hormones could affect his liver condition. (Dockets No. 36–2, ¶ 12; Docket No. 36–13, p. 1). Shortly thereafter, plaintiff took a leave of absence for medical treatment from September 8, 2003 until May 25, 2004, related to his hepatitis C condition and severe depression. (Dockets No. 36–2, ¶ 12; 36–6, p. 26; 36–14, ¶ 4; 45, ¶ 16). Upon stopping treatment, he was able to work, care for himself, dress himself, and see, hear, talk, breathe, and eat normally. After finishing the treatment, he was depressed due to his work situation, and he experienced trouble sleeping due to his depression. Plaintiff testified that he had had trouble sleeping prior to his hepatitis C problems and that the trouble returned after the work-related depression began. Plaintiff was treated with antidepressants to help him sleep. His sleeping problem, which he did not suffer from while receiving the treatment, was that he would wake up continually during the night, approximately every two hours, then be tired come morning. (Docket No. 36–6, p. 4–8).

The transition from Pfizer to WC was complete by the time plaintiff returned from leave. (Dockets No. 45, ¶¶ 9–10; 45–3, ¶ 34). On or around May 25, 2004, Dr. Carlos Robles Mora ("Dr. Robles"), WC's plant physician, evaluated plaintiff and cleared him to return to work. (Dockets No. 36–2, ¶ 15; 36–6, p. 26; 36–14, ¶ 5). During the evaluation, plaintiff indicated

that he felt fine, that he had no limitations to perform his regular duties, and that he did not desire any accommodation. (Dockets No. 36–2, ¶ 15; 36–14, ¶ 5, p. 4). Plaintiff reported to work under Claudio and was given his normal job functions. (Dockets No. 36–6, p. 26; 45, ¶ 12; 45–3, ¶ 36). Plaintiff explained to Claudio about his medical condition, and also explained to her what Dr. López had told him regarding exposure to hormones. Plaintiff requested gloves and a mask in order to perform his functions and duties, but WC never gave him any protective disposable clothing. (Dockets No. 45, ¶¶ 11–12, 14, 20; 45–3, ¶¶ 35, 38, 43; 45–4, p. 27).

On April 1, 2005, plaintiff received his performance evaluation for the year 2004. He was advised that he needed to improve his attendance. (Dockets No. 36–2, ¶ 16; 36–5, p. 20–24; 36–15, p. 4; 45–3, ¶ 57). Plaintiff claims that he did not have an "attendance problem" as his absenteeism in the year 2004 was justified by his medical leave of absence. (Docket No. 45, ¶ 16). Plaintiff's supervisors during the year 2004 were Claudio and Rosa, primarily Claudio. (Docket No. 36–5, p. 21). On September 15, 2006, plaintiff received his performance evaluation for the year 2005; he was advised that he needed to improve in several areas, such as his attendance, his productivity, his initiative, and the quality of his work. (Dockets No. 36–2, ¶ 17; 36–5, p. 24–26; 36–16, p. 2–4; 45–3, ¶ 57). Rosa was plaintiff's supervisor during the entire year 2005. (Docket No. 36–5, p. 24).

### D. Plaintiff's Additional Duty After Installation of the Air Lock Area

After the December 2006 installation of the air lock and controlled areas in the Packaging Department, Claudio assigned plaintiff to enter the air lock area to gather and dispose of the bags of discarded uniforms, though he did not enter the controlled area past the air lock. Plaintiff was not provided protective equipment despite his numerous requests. (Dockets No. 36–2, ¶¶ 18–19; 36–6, p. 16–25; 45, ¶ 23; 45–3, ¶¶ 9, 46). According to plaintiff, this task was not within his functions and duties.[4] (Dockets No. 36–6, p. 25; 45–3, ¶ 14). He was the only employee assigned to work in the air lock area, without any type of protective equipment. (Docket No. 45–3, ¶ 44). Although no one at WC ever told him that he was exposed to hormones in the air lock area, plaintiff believed, based on the dust he observed on the air lock's floor, that the air lock was contaminated with hormones. Plaintiff reached this conclusion because the employees wore their uniforms into the air lock area from the controlled rooms, where their uniforms had gotten covered with pill particulate and other materials related to the packaging and manufacturing process, and left the discarded uniforms in open plastic bags in the air lock area. (Dockets No. 36–2, ¶¶ 19–20; 36–6, p. 23–29; 45–3, ¶¶ 8, 13, 15). Plaintiff alleges that his assignment to collect the uniforms from the air lock, along with operating the shredder, increased his exposure to hormones. (Docket No. 45–3, ¶¶ 19, 63).

Plaintiff did not have any health problems or complications due to the hepatitis C condition prior to being assigned to the collection of the disposable uniforms, but afterward he started to develop rashes between his legs and allergies. (Dockets No. 45, ¶ 16; 45–3, ¶ 40; 48–5, p. 2). Over

---

4. Plaintiff's job description specifies that plaintiff's essential job functions include "[r]esponsible for performing other tasks assigned by your supervisor," and notes that "[o]ther tasks may be assigned" in addition to the essential functions. (Dockets No. 36–11, § III; 43–3, § III).

time, plaintiff's hepatitis C condition continued to deteriorate, so he had to take several prolonged medical leaves for treatment. (Dockets No. 45, ¶ 33; 45–3, ¶ 52). Plaintiff informed WC that when he was off work on medical leave, he did not suffer from any respiratory problems or blisters on his legs, but that the problems started again once he reported back to work and was assigned the collection and disposal of the uniforms and the shredder machine. (Docket No. 45–3, ¶ 53).

Plaintiff requested from Claudio and Rubén Lugo López ("Lugo"), WC's Human Resources Director (Docket No. 36–9, ¶ 1), not to be assigned to the collection of the allegedly contaminated used disposable uniforms; not to have to gather those uniforms in the air lock area; not to be assigned to the operation of the shredding machine; to be relocated to another position; for a uniform, mask and gloves in order to perform his functions and duties; and for time off and medical leave in order to receive treatment for hepatitis C and depression. (Dockets No. 45, ¶¶ 17, 26, 27, 42; 45–3, ¶¶ 41, 61; 45–4, p. 27, 30–33, 36). Plaintiff told Claudio and Lugo that he could not operate the shredder due to hormone exposure from the pill packaging, since he was suffering from rashes on his legs. (Dockets No. 45, ¶ 26; 45–3, ¶ 49). Plaintiff also told Claudio that José Betancourt, a night-shift maintenance employee, could have disposed of the discarded uniforms from the air lock area and operated the shredder machine, but WC did not assign Betancourt those duties despite plaintiff's request. (Dockets No. 45, ¶¶ 19, 42; 45–3, ¶¶ 42, 61; 45–4, p. 37–38).

Plaintiff on numerous occasions told Claudio and Lugo that they could contact his private general practitioner, Dr. Francisco Rovira Martinó ("Dr. Rovira"), to explore reasonable accommodation alternatives, but WC never met with plaintiff or his doctors to discuss his condition, accommodation requests, or alternatives, and never contacted Dr. Rovira. (Dockets No. 45, ¶¶ 27, 35; 45–3, ¶¶ 42, 54). Dr. Rovira told plaintiff he could not be exposed to hormones and must ask WC for relocation to another position and duties unrelated to hormone exposure. (Dockets No. 45, ¶ ; 45–3, ¶ 30). Dr. Rovira testified that he recalled recommending relocation to another area in forms WC had sent to him regarding plaintiff. (Dockets No. 45, ¶¶ 5–6; 45–3, ¶ 31; 45–7, p. 2–3).

Plaintiff verbally requested Claudio to exempt him from entering the air lock area to gather the bags containing the uniforms; Claudio told him he had no problem going inside the air lock and getting the bags. (Dockets No. 36–2, ¶ 19; 36–6, p. 23; 45–3, ¶ 14). Plaintiff then went to Dr. Robles and WC's nurses about the air lock issue; after that, WC granted plaintiff's request and he no longer had to enter the air lock area. Instead, thereafter, the bags containing the uniforms began to be placed outside the air lock area. Plaintiff was required to gather those bags from the non-controlled room outside the air lock and take them to a disposition area for destruction. (Dockets No. 36–2, ¶ 21; 36–6, p. 29–31, 32–35). According to plaintiff, placing the bags outside of the air lock area was in contravention of WC's SOPs. (Dockets No. 36–6, p. 35; 45–3, ¶ 16).

**E. Plaintiff's Disciplinary Warnings**

On February 6, 2007, plaintiff received a written reprimand for clocking in outside of his lunch period on January 31, 2007, and again on February 2, 2007, thus incurring unauthorized overtime. He signed the reprimand and was advised that any further violations of WC's policies and procedures could result in severe disciplinary actions, including termination of employ-

ment. (Dockets No. 36–2, ¶ 22; 36–5, p. 27–35; 36–18, p. 1). According to plaintiff, these incidents were inadvertent, as he was unfamiliar with the new time card system. He explained the mistake to Claudio and requested that she correct his time card, but instead Claudio issued the reprimand. (Dockets No. 36–5, p. 27–35; 45–3, ¶ 17).

On June 6, 2007, plaintiff was issued a second written reprimand for insubordination due to his refusal the previous day to gather the bags containing uniforms which were placed outside the air lock area. The reprimand reminded plaintiff that he did not work in areas exposed to contraceptives; that handling the bags did not represent any exposure to hormones, inasmuch as he was not entering any controlled areas to perform his duty; and that he could use gloves and masks if he so preferred. He was again advised that further violations could result in more severe disciplinary actions including termination. (Dockets No. 36–2, ¶ 23; 36–6, p. 21–22, 34–37; 36–17, p. 1; 43–7, p. 1; 45, ¶ 43; 45–3, ¶ 62). Plaintiff met with Claudio and Lugo to discuss the second reprimand. He tried to explain his health concerns about picking up the uniforms, and declined to sign the reprimand. (Docket No. 36–6, p. 37–41). Lugo told plaintiff during the meeting that if plaintiff had a problem with his liver, then he could not continue working at WC, since everything at WC was hormones. (Dockets No. 36–6, p. 48–49; 45, ¶ 39; 45–3, ¶ 58; 45–5, p. 18, 21).

## F. Plaintiff's Discrimination Complaints; Second Leave of Absence

Plaintiff went to WC's management to complain about alleged discrimination. (Docket No. 45–5, p. 12). According to plaintiff, he complained to Rosa that he had made several requests for reasonable accommodation, and that WC had done nothing with regard to his complaint. (Dockets No. 45, ¶ 45; 45–5, p. 12–13). Namely, plaintiff stated that he complained to Rosa that the area where he was working was a bad place for him to work but no one else had been assigned in his place, and he complained about working with the shredder machine and about his rash. (Docket No. 45–5, p. 13). Nothing happened as a result of the complaint to Rosa. (Docket No. 45–5, p. 13, 16–17). Plaintiff stated that he also complained to Ruth Torres, WC's Occupational Nurse, about his working conditions and his rash. (Dockets No. 36–2, ¶ 33; 45–5, p. 14).

According to plaintiff, Rosa, after seeing plaintiff talking with a coworker in the back of the Packaging Department, threatened to fire plaintiff if he continued to catch him talking and not doing anything. (Dockets No. 45, ¶ 49; 45–5, p. 13, 16–17). Plaintiff also stated that Claudio told him that he was at WC to do whatever she said, whenever she said it, and that on one occasion Claudio pushed him aside while coming down the stairs where plaintiff was cleaning and threatened to give plaintiff more work. (Docket No. 45–5, p. 17–20). Plaintiff further stated that Lugo, Claudio, and Dr. Robles knew about plaintiff's situation and his complaints but took no action. (Dockets No. 45, ¶ 45; 45–5, p. 15). WC never conducted any type of investigation regarding plaintiff's complaints of harassment and discrimination. (Dockets No. 45, ¶ 46; 45–3, ¶ 65).

Plaintiff left WC on a leave of absence from June 11, 2007 until March 4, 2008. (Dockets No. 36–2, ¶ 24; 36–14, ¶ 6, p. 7). During his leave, on August 13, 2007, he received treatment for a mental and emotional condition through the State Insurance Fund. (Dockets No. 45, ¶ 44; 45–3, ¶ 63; 45–9, p. 1). On June 18, 2007, plaintiff filed a discrimination charge with the

Puerto Rico Anti–Discrimination Unit ("ADU") and the Equal Employment Opportunity Commission ("EEOC") for alleged disability discrimination and retaliation. (Dockets No. 36–2, ¶ 25; 36–5, p. 2–5; 36–19, p. 1; 45, ¶ 47; 45–3, ¶ 66). On December 5, 2007, plaintiff filed the original complaint in the instant case.[5] (Dockets No. 1; 45, ¶ 52; 45–3, ¶ 71).

On or around January 9, 2008, plaintiff verbally complained to Dr. Robles that when he shredded discarded "blister" packages, at times, the packages were not empty but contained oral contraceptive pills. Plaintiff also complained that the other leftovers from the packaging area which he shredded were contaminated with hormones. (Dockets No. 36–2, ¶ 26; 36–14, ¶ 7; 45, ¶ 26; 45–5, p. 14). On the same date, Dr. Robles asked María Ortíz, former Industrial Hygienist at WC, and Viginia Buzó, Safety Specialist, to perform a risk analysis of the packaging area where the shredding of empty blister packages was performed in order to determine whether any possible exposure to hormones was within the limits of the occupational exposure level ("OEL").[6]

(Dockets No. 36–2, ¶ 27; 36–14, ¶ 8). After sampling and testing the packaging area where empty blister packages were shredded, WC concluded that when plaintiff shredded empty blister packages in the packaging area, the exposure level to hormones was significantly below the established OEL. Thus, WC concluded that plaintiff was not in danger of any expected health risks from shredding the blister packages.[7] (Dockets No. 36–2, ¶ 29; 36–14, ¶¶ 10–11).

## G. Plaintiff's March 2008 Absence and Termination

Plaintiff returned to work from his leave of absence on March 4, 2008. (Dockets No. 36–2, ¶ 31; 36–14, ¶ 6, p. 10, 18). On March 24, 2008, plaintiff called in to WC's dispensary around 10:00 and informed nurse Torres that he would be absent from work, as he had allegedly suffered an accident at home the previous Saturday, March 22, 2008 and would be absent for four or five days. (Dockets No. 36–2, ¶ 33; 36–6, p. 42–43; 36–9, ¶ 11; 36–22, p. 1; 36–23, p. 1; 37–3, p. 1; 43–12, p. 1; 43–13, p. 1; 45–3, ¶ 24). According to plaintiff, dur-

5. Plaintiff filed an amended complaint on June 23, 2008. (Docket No. 11).

6. The OEL is the upper limit on the amount or concentration of a hazardous substance or chemical to which workers may be exposed during an average eight hours without experiencing risks to their health. Depending on the nature of the hazardous substance and/or chemical, the OEL might be established by the Occupational Safety and Health Administration ("OSHA") or by the manufacturing company. (Dockets No. 36–2, ¶ 28; 36–14, ¶ 9).

7. In Plaintiff's Responses and Objections to Defendant's Proposed Statement of Uncontested Facts, plaintiff contends that Dr. Robles never conducted any type of sampling or tests regarding the hormone exposure level in any part of the packaging area. (Docket No. 45, ¶ 29). The affidavit offered in support of this statement (Docket No. 45–3, ¶ 21) does

not substantiate it. As defendant points out, plaintiff lacks personal knowledge that no tests were conducted. See Fed.R.Civ.P. 56(e). For its part, defendant submitted Dr. Robles's affidavit stating that he had the test conducted by Ortíz and Buzó, with further support in Dr. Robles's progress notes from January 9, 2008. (See Docket No. 36–14, ¶¶ 8–10, p. 8–9). Also unsubstantiated by the affidavit is plaintiff's statement in his Responses and Objections that he never witnessed any tests conducted and was never provided any test results. (Docket No. 45, ¶ 29). As defendant notes, the affidavit's statement that plaintiff never saw any tests or results (Docket No. 45–3, ¶ 21) does not properly controvert defendant's statement that the test was conducted. (See Docket No. 48, ¶ 29). I therefore find that plaintiff has not raised a genuine issue of fact as to whether the test was conducted.

ing the phone call with Torres, plaintiff explained everything that had happened to him, the pain he felt, and where he felt it. Also according to plaintiff, Torres recommended that plaintiff go to the doctor immediately and spoke with him while plaintiff was driving to the doctor. (Dockets No. 45, ¶ 33; 45-3, ¶ 24; 45-5, p. 2-3). According to plaintiff, Torres told plaintiff that she would contact his supervisor, Claudio, and inform Claudio about the accident plaintiff had just suffered. (Dockets No. 45, ¶ 33; 45-3, ¶ 24; 45-5, p. 3-4). Torres called Cortés, another of plaintiff's supervisors, the same day (March 24, 2008) to tell him that plaintiff had been absent from work that day due to his alleged accident.[8] (Dockets No. 36-22, p. 1; 43-12, p. 1).

Plaintiff alleges that on previous occasions, when he was going to be absent due to medical reasons, he would contact the dispensary nurses to inform them of his absence and the approximate duration thereof; the nurses would then contact his supervisors to pass on this information. He would not notify the nurses or his supervisor daily during these absences, but on his return or as soon as possible thereafter, he would provide WC a medical certificate either through the dispensary nurses or his supervisor. He was not disciplined for doing this. During several such absences, Claudio had contacted plaintiff to inquire about his health condi-

tion and the date he would report back to work. (Dockets No. 45-3, ¶¶ 22, 28; 45-5, p. 4).

Pursuant to WC's attendance policies, upon an absence employees must communicate, on a daily basis, with their immediate supervisor and must bring a medical certificate to WC's medical dispensary for any absence exceeding two work days. Plaintiff received a copy of these policies and acknowledged the receipt on May 14, 2007. (Dockets No. 36-2, ¶ 32; 36-5, p. 18-20; 36-9, ¶ 10; 36-20; 36-21). The evidence is inconclusive as to whether or not Torres told plaintiff to contact his supervisor about his absence. Plaintiff stated both during his deposition and in a sworn affidavit that Torres never told plaintiff that he must contact Claudio to explain what had happened, as Torres had told plaintiff she would do so. (Dockets No. 45, ¶ 33; 45-3, ¶ 24; 45-5, p. 3-4). However, according to plaintiff's termination letter from Lugo, dated March 28, 2008, plaintiff was advised during his call with Torres that it was his duty to contact his supervisor regarding his absence, pursuant to WC's policy. (Dockets No. 36-23, p. 1; 43-13, p. 1).

It is undisputed that during the period between March 24, 2008 and March 28, 2008, plaintiff at no time contacted his immediate supervisor regarding his ab-

---

8. The parties dispute whether the accident actually occurred. According to plaintiff, after calling Torres on March 24, 2008, plaintiff went to the doctor, who prescribed treatment and ordered x-rays. (Dockets No. 36-22, p. 1; 43-12, p. 1; 45, ¶ 33; 45-3, ¶ 24; 45-5, p. 5, 7). Plaintiff testified that he had the x-rays taken the same day, but was unable to pay to get a copy of the results that day. (Docket No. 45-5, p. 5-7). Dr. Rovira testified that on March 24, 2008, plaintiff came to him for reissuance of an x-ray order Dr. Rovira had originally written on January 12, 2008, after plaintiff had had an accident at home. Dr.

Rovira testified that plaintiff returned with the x-ray report on March 29, 2008, and that he issued plaintiff a medical certificate on March 31, 2008, but that the date of the trauma listed on the certificate (March 22, 2008) was in error, as there was no trauma other than the January trauma. (Dockets No. 37-2, p. 4-8; 37-3, p. 1; 48-3, p. 16-17). This testimony, defendant contends, shows that the alleged accident never happened. (Docket No. 48, p. 9-10, n. 4). However, I must construe the fact of the accident in plaintiff's favor for summary judgment purposes.

sence from work. (Dockets No. 36–2, ¶ 34; 36–6, p. 42–44; 36–9, ¶ 12; 36–22, p. 1; 45–5, p. 6). On March 28, 2008, plaintiff showed up at the security guard station at WC's premises to receive his paycheck in order to be able to pay for his x-ray results and obtain a medical certificate. (Dockets No. 36–2, ¶ 35; 36–9, ¶ 13; 45, ¶ 33; 45–3, ¶ 25; 45–5, p. 6–11). To request his paycheck, plaintiff met with Eric Betancourt, one of WC's human resources officials. (Dockets No. 45, ¶ 33; 45–3, ¶ 26; 45–5, p. 8–11). Plaintiff states that he told Betancourt about his accident, recounted his phone call to Torres and that Torres had told him she would tell Claudio about his accident and four-to five-day absence, and told Betancourt that he needed his paycheck in order to pay for his x-ray results, medicine, and medical certificate, and that the doctor needed the x-ray before preparing and issuing a medical certificate. (Dockets No. 45, ¶ 33; 45–3, ¶ 26; 45–5, p. 9–10). Plaintiff informed Betancourt that plaintiff was going to return to WC with the x-ray results later on, and also showed him his bruised rib cage area. (Dockets No. 45, ¶ 33; 45–3, ¶ 26; 45–5, p. 9). At that time, Betancourt did not inform plaintiff that he had been terminated.[9] (Dockets No. 45, ¶ 33; 45–3, ¶ 26). Plaintiff then left WC's premises without communicating with his supervisor. (Dockets No. 36–2, ¶ 35; 36–9, ¶ 13).

The parties dispute whether plaintiff returned later the same day with the x-ray results and medical certificate, or whether his return visit was on March 31, 2008. According to plaintiff's deposition testimony and affidavit, plaintiff made a second visit to WC on March 28, 2008, and showed his x-ray results and medical certificate to Betancourt. Plaintiff testified that he tried to provide Betancourt with a copy of the x-ray results, but that Betancourt told him he did not want to touch the x-ray results. (Dockets No. 45, ¶ 33; 45–3, ¶ 26; 45–5, p. 9–11). Plaintiff stated in his deposition testimony that he then left the WC premises and did not go back.[10] (Docket No. 45–5, p. 11). Defendant contends that plaintiff did not attempt to file any medical certificate with WC on March 28, 2008, but rather on March 31, 2008, after plaintiff had already been terminated. (Docket No. 48, ¶ 33, n. 4). Defendant bases this contention on Dr. Rovira's medical certificate for plaintiff, which is dated March 31, 2008 (see Docket No. 37–3, p. 1), and on the deposition testimony of Dr. Rovira that he issued plaintiff's medical certificate on March 31, 2008. (Docket No. 37–2, p. 7).

Also on March 28, 2008, Cortés e-mailed Lugo to inform him of the call he had received from Torres on March 24, 2008, regarding plaintiff's absence the day of the call. Cortés noted that as of March 28, 2008, plaintiff had not contacted Cortés nor sent a medical certificate that covered his absence, per company policy. Cortés commented that the situation was causing an operational problem in the Packaging Department as Cortés had to reassign oth-

9. The decision to terminate plaintiff apparently was not made until later the same day, after Lugo received word of plaintiff's visit to request his paycheck. (See Dockets No. 36–23, p. 1; 43–13, p. 1).

10. Plaintiff's affidavit additionally states that plaintiff left his x-ray results with Betancourt and that he delivered Dr. Rovira's medical certificate to WC on March 31, 2008. I recommend striking these portions of the affida-vit (see section II.B, infra) as they contradict plaintiff's earlier deposition testimony, in which plaintiff stated that he left right after Betancourt said "I don't want to touch that" and did not return to WC; plaintiff's deposition testimony mentions no events after March 28, 2008. (Docket No. 45–3, ¶¶ 26, 27; see also Docket No. 45, ¶ 33). Therefore, I do not take these portions of the affidavit into consideration at the summary judgment stage.

er workers to cover plaintiff's tasks. (Dockets No. 36–22, p. 1; 43–12, p. 1).

Finally, on the same date, March 28, 2008, after learning of plaintiff's visit to WC that morning, Lugo sent plaintiff a letter terminating his employment for what WC considered job abandonment in violation of its attendance policies. The letter noted that plaintiff had never contacted his supervisor regarding his absence and stated that WC's decision took into consideration not only plaintiff's violation of WC's rules regarding absences but also his prior discipline. (Dockets No. 36–2, ¶ 35; 36–6, p. 45; 36–9, ¶¶ 13–14; 36–22, p. 1; 36–23, p. 1; 43–13, p. 1; 45, ¶ 53; 45–3, ¶¶ 27, 72). After plaintiff's discharge, plaintiff alleges, Betancourt sent defendant's officers an official e-mail[11] stating that if an employee was absent, the supervisors must hold a meeting with the employee and a human resources officer to inquire about the employee's reasons for absence, and stating that no disciplinary action could be taken against the employee before such a meeting. (Docket No. 45, ¶ 57; 45–3, ¶ 75). Lugo never reconsidered plaintiff's termination; WC's officers never met with plaintiff, either before or after his termination, in order to inquire about the reasons for plaintiff's absence. (Dockets No. 45, ¶¶ 56, 58; 45–3, ¶¶ 74, 76).

## II. DEFENDANT'S MOTION TO STRIKE

Before addressing the merits, I must resolve the preliminary matter of defendant's motion to strike. In opposing summary judgment, plaintiff objected to some of defendant's proposed facts and stated additional facts; among other supporting exhibits, plaintiff filed his own sworn statement ("Rivot Statement"). (Docket No. 45–3, Ex. 1). Defendant then made a mo-

tion to strike the Rivot Statement, which plaintiff did not oppose. (Docket No. 50). Plaintiff is thus deemed to have waived objection to the motion. Local R. 7(b). Defendant makes three arguments: (1) that the Rivot Statement was not disclosed to defendant prior to its filing; (2) that the Rivot Statement is a sham statement that contradicts plaintiff's prior sworn testimony during his deposition; and (3) that the Rivot Statement contains inadmissible hearsay. (Docket No. 50).

### A. Alleged Discovery Violations

Defendant first moves to strike the Rivot Statement because it was not identified as part of plaintiff's initial disclosures or discovery request responses, and was not produced until after the discovery deadline. (Docket No. 50, p. 2–4). Defendant also notes that the Rivot Statement contains names, dates, and other pertinent details that plaintiff did not specifically disclose in his interrogatory responses nor any later supplements. (Docket No. 50, p. 2–3; *see also* Docket Nos. 50–2, 50–3).

Rule 26(a) requires, *inter alia,* that

a party must, without awaiting a discovery request, provide to the other parties: (i) the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . .

11. This e-mail has not been submitted into evidence.

Fed.R.Civ.P. 26(a)(1)(A). Rule 26(e), moreover, requires a party to supplement its disclosures made under Rule 26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R.Civ.P. 26(e)(1)(A). In turn, Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). *See also Ortiz–Lopez v. Sociedad Española de Auxilio Mutuo Y Beneficencia de P.R.*, 248 F.3d 29, 33 (1st Cir.2001) (Rule 37 provides for a "self-executing sanction" for failure to make required evidentiary disclosures).

Defendant's challenge is misplaced. Plaintiff produced the Rivot Statement after the discovery cutoff deadline of April 3, 2009 (*see* Docket No. 21) because it was not created until June 22, 2009. (Docket No. 45–3, p. 18). As the document did not exist during the discovery period, Rule 26 is inapposite. Plaintiff is required to produce documents in his possession; Rule 26(a) does not obligate him to create a new document. *See Florer v. Johnson–Bales*, 2010 WL 597170 (W.D.Wash. Feb. 17, 2010); *Walker v. THI of N.M. at Hobbs Ctr.*, 2010 WL 552661 (D.N.M. Feb. 8, 2010). And Rule 56 clearly states that a party may oppose a motion for summary judgment by submitting an affidavit. *See* Fed. R. Civ. Pro. 56(e)(2).

Even were Rule 26 applicable, I find the late filing of the Rivot Statement was harmless under Rule 37(c)(1). The matters supported by the Rivot Statement— *e.g.*, plaintiff's job duties, his communications with WC officers about medical accommodations, and the events of the days leading up to plaintiff's termination—were discussed during plaintiff's deposition, despite inconsistencies between the former and the latter (which will be addressed below). Moreover, defendant did not move to take additional discovery based on the late receipt of the Rivot Statement. Given these circumstances, I find that defendant suffered no prejudice due to the late disclosure. In sum, no sanction of exclusion is warranted on this ground.

## B. Alleged Contradiction of Deposition Testimony

■■■ Defendant next argues that the Rivot Statement should be stricken in its entirety as a "sham affidavit." (Docket No. 50, p. 4–14). In opposing a summary judgment motion, a party cannot attempt to create an issue of fact by filing a "sham affidavit" that contradicts prior deposition testimony. *Rivera–Rocca v. RG Mortg. Corp.*, 535 F.Supp.2d. 276, 285 n. 5 (D.P.R.2008). "Our law is clear that '[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory' without providing 'a satisfactory explanation of why the testimony is changed.'" *Colburn v. Parker*, 429 F.3d 325, 332 n. 3 (1st Cir.2005) (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994)). Whether there is a contradiction and whether the explanation for it is satisfactory are often highly fact-dependent. *Hernandez–Loring v. Univ. Metropolitana*, 233 F.3d 49, 54 (1st Cir.2000). The timing of the change in testimony, *i.e.*, in response to a summary judgment request, is probative of an attempt to manufacture an issue of fact. *See Colantuoni*, 44 F.3d at 5; *see also Orta–Castro v. Merck, Sharp & Dohme Química P.R., Inc.*, 447 F.3d 105, 110 n. 2 (1st Cir.2006) (noting that "[i]n fact, the Statement was executed on the same date that [plaintiff] filed

her opposition to [defendant]'s motion for summary judgment."). The court is entitled to strike portions of the affidavit containing unexplained inconsistencies, *Colburn*, 429 F.3d at 332 n. 3, but need not specifically enumerate the contradictions that lead it to do so. *Orta–Castro*, 447 F.3d at 110. However, it is an abuse of discretion for the court to disregard an affidavit pertaining to previously identified incidents that are merely described with more specificity in the affidavit. *Hernandez–Loring*, 233 F.3d at 55.

Defendant urges the court to strike the Rivot Statement altogether, pointing to multiple specific portions it contends are inconsistent with plaintiff's deposition testimony. Because plaintiff did not oppose the motion to strike, plaintiff is deemed to have waived objection to the motion. Local R. 7(b). While I do not recommend striking the entire affidavit, I recommend that certain portions thereof be stricken. Upon careful review of the deposition excerpts provided by the parties, I find that while certain of defendant's challenges prove unavailing, numerous inconsistencies do exist wherein the challenged portions either contradict plaintiff's deposition testimony or describe new incidents not described in the deposition.

Plaintiff bears the burden of explaining any inconsistencies, yet he did not oppose the motion to strike and the Rivot Statement itself offers no acknowledgment or explanation of any conflicts. Plaintiff was deposed on March 18, 2009, with his counsel present (*see, e.g.,* Dockets No. 36–5, p. 2; 45–4, p. 17), leaving plaintiff's counsel ample opportunity in the interim to correct or clarify any alleged errors. *See Colburn*, 429 F.3d at 332 n. 3. Importantly, plaintiff did not offer the Rivot Statement until after defendant had filed for summary judgment, and the Rivot Statement was executed the same day it was filed with his

motion opposing summary judgment and responsive statement of material facts. Given these circumstances, I recommend that the court **grant in part** defendant's motion, **strike** the following portions, and disregard them on summary judgment:

1. The entirety of paragraphs 18, 45, 47, 51, 55, 56, 59, 60, 68, 69, and 70.

2. The first and second sentences of paragraph 20. The last sentence of paragraph 26. The first sentence of paragraph 27. The first sentence of paragraph 54.

3. Everything after the word "Plant" in paragraph 6. The phrase "the shredder machine" in the third sentence of paragraph 20. In paragraph 40, the phrases "and the shredding of pill boxes, pills, and other pills residue and particulate"; "bruises and open ulcers"; "nor from respiratory problems, nor bronchitis"; "and the operation of the shredding machine"; "open ulcers, respiratory problems, sever [sic] bronchitis, and other health related conditions of my Hepatitis C condition." Everything after the word "allergies" in the last sentence of paragraph 40. The phrase "since the last months of the year 2004" in paragraph 41. The phrase "granted to me any reasonable accommodation, nor" in paragraph 42. The phrase "on a daily basis and up until my discharge" in paragraph 58. The phrase "of not providing me any type of reasonable accommodation and instead," and everything after the word "shredder" in the first sentence of paragraph 63.

With regard to the remaining portions challenged by defendant, I find that they contain no contradictions with deposition testimony that merit disregard. I therefore recommend that the court **deny in part** defendant's motion and decline to

strike the remainder of the Rivot Statement.

## 4. Hearsay Objections

Defendant next argues that certain portions of the Rivot Statement should be stricken because they contain inadmissible hearsay.[12] (Docket No. 50, p. 14–15). In ruling on a summary judgment motion, the court may not consider inadmissible evidence. *See* Fed.R.Civ.P. 56(e); *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir.1993). Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A "statement" for hearsay purposes includes "an oral or written assertion." Fed.R.Evid. 801(a). Hearsay statements are inadmissible except as specifically provided by the Federal Rules of Evidence, rules prescribed by the Supreme Court, or an Act of Congress. Fed.R.Evid. 802.

Turning to the contested matters, defendant challenges statements in paragraphs 5, 6, 20, 24, 26, 30, 31, 67, 68, 75, and 76 of the Rivot Statement. (Docket No. 45–3, 14). Paragraphs 5, 6, and 20 contain statements Dr. López, Pfizer's company doctor, allegedly made to plaintiff. (*Id.*, ¶¶ 5, 6, 20). These are admissible to the extent "offered not to prove the truth of the matter asserted but merely to show context—such as … what effect the statement[s] had on the listener." *United States v. Cruz–Diaz*, 550 F.3d 169, 176–77 (1st Cir.2008) (citation omitted); *see* Fed.R.Evid. 801(c). Paragraph 20's alleged

statements by Dr. Robles, WC's company doctor, are non-hearsay admissions of a party-opponent; they are also "verbal acts," offered not to show the truth of the matters asserted, but for the fact that Dr. Robles made the statements. *See* Fed.R.Evid. 801(c), 801(d)(2)(D); *see also United States v. Garza*, 754 F.2d 1202, 1206 (5th Cir.1985).

In paragraph 24, plaintiff alleges that nurse Torres told plaintiff "that she was going to contact my supervisor, Mrs. Espada [sic], and would informed [sic] her about the accident that I had just suffered, and about the fact that I was going to be absent 4 or 5 days due to the accident suffered." (Docket No. 45–3, ¶ 24). This is admissible non-hearsay to the extent offered not to prove the truth of the matter asserted, but to show its effect on plaintiff to explain his conduct. *See* Fed.R.Evid. 801(c); *Cruz–Diaz*, 550 F.3d at 176–77.[13]

Paragraphs 26 and 76 contain Eric Betancourt's alleged statement that "he did not want to even touch" plaintiff's X-ray results. (Docket No. 45–3, ¶¶ 26, 76). This is not offered to prove the truth of the matter asserted and thus is not hearsay, *see* Fed.R.Evid. 801(c); even if it were hearsay, it would fall within the state-of-mind hearsay exception. *See* Fed.R.Evid. 803(3). Paragraph 26 further alleges that Betancourt "informed [plaintiff] that [he] must leave WC premises and that [he] was going to be contacted by WC." (Docket No. 45–3, ¶ 26). Neither part of the alleged statement is hearsay: the second

---

12. Defendant challenges some statements on both sham affidavit and hearsay grounds. I will evaluate defendant's hearsay challenges independent of the sham affidavit analysis above.

13. The statements may also be admissible non-hearsay as the admissions of a party-opponent. *See* Fed.R.Evid. 801(d)(2)(D).

However, plaintiff has not shown that it was within the scope of Torres's employment, as WC's Occupational Nurse, to inform employees' supervisors about their injuries when WC's company policy called for such communications to come from the employees themselves.

part is an admission by a party-opponent, *see* Fed.R.Evid. 801(d)(2)(D); the first is an imperative command, not an assertion. *See United States v. Safavian*, 435 F.Supp.2d 36, 44–45 (D.D.C.2006) (e-mailed instructions telling defendant what to do were not hearsay). Paragraph 75's statements from an alleged e-mail from Betancourt to WC's officers (Docket No. 45–3, ¶ 75) constitute admissions of a party-opponent as well. *See* Fed.R.Evid. 801(d)(2)(D).

Paragraphs 30 and 31 state in full, "Dr. Rovira told me that I cannot be exposed to hormones, and that I must request to WC to be relocated to another position to perform other maintenance duties not related to hormone exposure. Dr. Rovira also recommended in one of the forms that WC sent to him regarding me, that I be relocated to another area." (Docket No. 45–3, ¶¶ 30–31). Dr. Rovira's alleged statements are admissible to the extent that they are not offered for their truth, but for other purposes, such as the first statement's impact on plaintiff or the second statement's role in the context of an alleged pattern of ignored accommodation requests.

Paragraphs 67 and 68 recount threats by Rosa and other of "defendant's top officers" to fire plaintiff after he filed his discrimination charge. (Docket No. 45–3, ¶¶ 67–68). These alleged threats are admissible to the extent that they are offered for their independent legal significance as "verbal acts." *See* Fed.R.Evid. 801(a); *Tompkins v. Cyr*, 202 F.3d 770, 779 n. 3 (5th Cir.2000) (threatening letter was verbal act, not "statement" for purposes of hearsay rule); *Disability Advocates, Inc.*

*v. Paterson*, 653 F.Supp.2d 184, 202 n. 81 (E.D.N.Y.2009) ("threats ... are not hearsay but 'verbal acts' "); *Garza*, 754 F.2d at 1206.[14]

Given the foregoing, I recommend that defendant's motion to strike portions of the Rivot Statement on grounds of hearsay and discovery violations be **denied,** but that the court **grant** defendant's motion to strike on sham affidavit grounds with regard to the portions specified above.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes

---

14. The statements may also be admissions of a party-opponent. *See* Fed.R.Evid. 801(d)(2)(D). However, plaintiff has not shown that termination of his employment was within the scope of Rosa's or the unnamed WC officers' functions during the relevant time period. *See* Fed.R.Evid. 801(d)(2)

("The contents of the statement shall be considered but are not alone sufficient to establish ... the agency or employment relationship and scope thereof under subdivision (D)"); *Valdizan v. Rivera–Hernández*, 376 F.Supp.2d 161, 169 (D.P.R.2005), *rev'd on other grounds*, 445 F.3d 63 (1st Cir.2006).

demonstrate the absence of a genuine issue of material fact." *Crawford–El v. Britton,* 523 U.S. 574, 600 n. 22, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" and support such facts with "affidavits ... made on personal knowledge ... set[ting] forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). While the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary,* 58 F.3d at 751, summary judgment is still appropriate where the nonmoving party rests entirely on conclusory allegations, improbable inferences, unsupported speculation, or wholesale denials with regard to any essential element of the claim. Fed. R.Civ.P. 56(e); *Libertad v. Welch,* 53 F.3d 428, 435 (1st Cir.1995); *Carroll v. Xerox Corp.,* 294 F.3d 231, 236–37 (1st Cir.2002); *MedinaMuñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## B. Plaintiff's ADA Claims

### 1. Disability Discrimination Claims

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "In the employment context, the ADA prohibits a 'covered enti-

ty' ... from 'discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.'" *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 510 (1st Cir.1996) (quoting *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 30 (1st Cir.1996)). Discrimination as defined by the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA also forbids an entity from retaliating against a person who exercised the rights enumerated under the ADA. *See* 42 U.S.C. § 12203.[15]

 In the discrimination context, a plaintiff may prove a case directly or indirectly. To directly establish a *prima facie* claim of disability discrimination under the ADA, a plaintiff must prove the following by a preponderance of the evidence: "First, that he was disabled within the meaning of the Act. Second, that with or without reasonable accommodation he was able to perform the essential functions of his job. And third, that the employer discharged him," or otherwise discriminated against him in regards to compensation or other terms, conditions, and privileges of employment, "in whole or in part because of his disability." *Katz,* 87 F.3d at 30.

**15.** The ADA Amendments Act of 2008, Pub.L. No. 110–325 (2008), is inapplicable to the instant case as the Act is not retroactive and the events at issue took place prior to its effective date of January 1, 2009. *See Thornton v. United Parcel Serv., Inc.,* 587 F.3d 27, 34 n. 3 (1st Cir.2009).

A plaintiff may indirectly prove his or her case "by using the prima facie case and burden shifting methods" that originated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Katz,* 87 F.3d at 30 n. 2 (citation omitted); *see also Dichner v. Liberty Travel,* 141 F.3d 24, 29–30 (1st Cir.1998). Under this analysis, "a plaintiff must first prove by a preponderance of the evidence that he or she (i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result." *Jacques,* 96 F.3d at 511 (citing *Taylor v. Principal Fin. Group,* 93 F.3d 155, 162–63 (5th Cir. 1996)). Once a plaintiff satisfies his or her burden of proving a *prima facie* case, he or she has created a rebuttable presumption that the defendant did in fact engage in the prohibited discriminatory conduct. *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993). To defeat this presumption, the defendant must articulate a legitimate, nondiscriminatory reason for the alleged unlawful employment action. *See id.* It then becomes the plaintiff's burden to show that the defendant's stated nondiscriminatory reason was a mere pretext and that the true reason for the employment action was based on the plaintiff's disability. *See id.* at 842–43.

### a. Actual Disability Claim

Plaintiff argues that WC discriminated against him by failing to accommodate him, harassing him, and ultimately discharging him on the basis of his disability. Defendant WC argues that plaintiff cannot directly prove any element of his claim. WC first challenges whether plaintiff is disabled within the meaning of the ADA. The ADA sets forth three different definitions of the term "disability" with respect to an individual, of which plaintiff argues he is disabled under the first: "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). For evaluating claims brought under this definition, the First Circuit has articulated a three-part analysis: first, the court considers whether the plaintiff's alleged condition constitutes a mental or physical "impairment." Second, the court identifies the life activities upon which the plaintiff relies to determine whether they constitute "major life activities" under the ADA, *i.e.,* activities that are of central importance to daily life. Third, tying the two statutory phrases together, the court asks whether the impairment substantially limits the major life activity. *Carroll,* 294 F.3d at 238 (citations omitted).

For purposes of summary judgment only, WC does not dispute that plaintiff's hepatitis C condition qualifies as a physical impairment under the ADA. (Docket No. 37, p. 4). Nor does WC dispute that eating, working, and sleeping, as identified in plaintiff's complaint, are "major life activities." (Dockets No. 11, ¶ 4; 37, p. 5–6). *See also Calero–Cerezo,* 355 F.3d at 21 (eating and sleeping are major life activities); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (assuming, without deciding, that working may be considered a major life activity for ADA purposes). Rather, WC focuses on the third part of the analysis: whether plaintiff's hepatitis C condition substantially limits a major life activity.

The determination of whether a plaintiff has a disability must be made on a

case-by-case basis. *See Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The ADA requires that a plaintiff prove a disability by offering evidence that the extent of the limitation caused by the impairment in terms of his own experience is substantial. *Id.* (citing *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)). According to EEOC regulations, considerations in determining whether a claimed limitation is substantial include the nature and severity of the impairment, its duration or expected duration, and the real or expected permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). The court must also consider the effects of corrective and mitigating measures taken for the impairment, as the ADA requires that a person be presently, not potentially or hypothetically, substantially limited in order to demonstrate a disability. *Sutton,* 527 U.S. at 482–83, 119 S.Ct. 2139. The term "substantially limits," though undefined by the statute, "suggests [a limitation that is] 'considerable' or 'to a large degree.'" *Toyota,* 534 U.S. at 196, 122 S.Ct. 681. Unique to the major life activity of working, the phrase "substantially limits" requires that a claimant show an inability to work in a "broad range of jobs," rather than a specific job. *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139; 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

In light of this "demanding standard for qualifying as disabled," *Toyota,* 534 U.S. at 197, 122 S.Ct. 681, it is clear that plaintiff has not met his burden of showing that his hepatitis C condition substantially limited any of the three major life activities his amended complaint identifies. The allegedly discriminatory conduct did not commence until after plaintiff's return to work from his first leave of absence for hepatitis C treatment. Plaintiff testified that after the nine-month course of treatment concluded, he was able to work and eat. Further, although plaintiff stated that his hepatitis C condition worsened over time, he alleges that he continued to receive treatment for it and does not allege any change in his ability to eat, work, or sleep due to this deterioration. Moreover, plaintiff never alleges that he was unable to work in a broad range of jobs. At most, plaintiff has proffered evidence that he was restricted to some extent in his ability to perform certain tasks pertaining to his particular job.

Importantly, the evidence of the rash and allergies plaintiff developed when working with the shredder machine [16] does not create a triable fact that plaintiff's hepatitis C condition substantially limited his major life activity of working. The fact that plaintiff suffered an occupational-induced rash and allergies when performing one particular task within his various essential job functions does not show a substantial limitation on working a broad range of jobs. An employee's major life activity is not substantially limited when an impairment interferes with his performance of one particular job. *Jasany v. U.S. Postal Serv.,* 755 F.2d 1244, 1248–49 (6th Cir.1985). *See also Maulding v. Sullivan,* 961 F.2d 694, 695–98 (8th Cir.1992) (lab chemist with sensitivity to noxious fumes in lab could not show that it substantially limited her employment as a whole); *Pat-*

16. Plaintiff also introduced evidence that he suffered these symptoms during the period when he had to collect the bags of discarded uniforms from *inside* the air lock area, but has not alleged that gathering the bags from *outside* the air lock likewise gave him a rash or allergies.

*rick v. S. Co. Serv.*, 910 F.Supp. 566, 570–71 (N.D.Ala.1996) (plaintiff with workplace-induced Multiple Chemical Sensitivities did not show impairment disqualifying her from "a class of jobs or a broad range of jobs in various classes"); *Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994) ("[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one."). Here, plaintiff's inability to work in a job that would expose him to hormones "neither amounts to an inability to work nor a significant restriction as to the condition, manner, or duration under which [the plaintiff] can work." *Minnix v. City of Chillicothe*, 2000 WL 191828, at *2 (6th Cir.2000) (plaintiff's occupational-induced recurrent bronchitis did not substantially impair major life activity of working).

Plaintiff also has not shown that he was substantially limited in the major life activity of sleeping. There is no evidence that plaintiff's hepatitis C condition directly caused him sleeping problems, and plaintiff's invocations of his depression are inadequate to show a substantial limitation. Though the issue has not been addressed by the First Circuit, other courts have held that the treatment of a condition that is not itself disabling can count as a disability. *See, e.g., Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1052 (7th Cir.1997), *cert. denied*, 523 U.S. 1022, 118 S.Ct. 1304, 140 L.Ed.2d 469 (1998) (treatment for high cholesterol could be a disability under the ADA even though high cholesterol itself was not a disability).[17] This theory does not help plaintiff. For one, plaintiff's medications caused incapacitating depression *during* the nine-month course of treatment, but plaintiff experienced no trouble sleeping at that time and the treatment ended prior to the commencement of WC's challenged conduct. Second, while plaintiff did have problems sleeping due to depression *after* the treatment ended (*i.e.*, during the relevant time period), there is no evidence that the second bout of depression was incapacitating, or that it was caused by the hepatitis C treatment or the condition itself. Quite the contrary: plaintiff testified that he had experienced trouble sleeping prior to his hepatitis C problems and that his depression after the treatment concluded was because of his conflicts at work, not the hepatitis. Plaintiff thus has not shown that his hepatitis C condition or treatment therefor was a disability that substantially limited his major life activity of sleeping during the relevant time period.

In short, plaintiff has failed to provide sufficient evidence to establish a triable issue that he was disabled under the ADA. Because plaintiff cannot prove the first, key element of the *prima facie* case, I need not pursue the direct analysis any further nor consider whether plaintiff can prove his case indirectly. I therefore recommend that the court grant defendant's summary judgment motion as to plaintiff's claim of discrimination on the basis of actual disability.[18]

---

**17.** Plaintiff has not alleged that his treatment—or the depression itself—was a disability under the ADA.

**18.** Because I find that plaintiff does not have a disability within the meaning of the ADA, it follows that plaintiff's failure-to-accommodate claim must fail along with the claims for harassment and discharge due to disability. Employers are required under the ADA to make reasonable accommodations to "the known physical or mental limitations of an otherwise qualified individual *with a disability* ...." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Without having a disability, plaintiff is not entitled to any accommodation. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir.1999); *Ruíz Rivera v. Pfizer Pharm. LLC*, 463 F.Supp.2d 163,

### b. "Regarded As" Claim

■ Plaintiff raises for the first time in his opposition to the motion for summary judgment an additional legal theory: that defendant discriminated against plaintiff because it regarded him as having a disability. (*See* Docket No. 46, p. 2–3, 6). The ADA definition of "disability" includes "being regarded as having ... an impairment" that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(1)(C). In turn, an individual meets the requirement of "being regarded as having such an impairment" if "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

■ Courts generally cannot entertain claims on summary judgment that never appeared in the complaint, as the defendant has an "inalienable right to know in advance the nature of the cause of action being asserted against him." *Ruiz Rivera v. Pfizer Pharms., LLC,* 521 F.3d 76, 84 (1st Cir.2008) (citation and quotation omitted). Litigants may constructively amend their pleadings by implied consent, but no grounds for such amendment exist here. *See* Fed.R.Civ.P. 15(b); *Cruz–Acevedo v. Toledo–Dávila,* 2009 WL 2151295, at *6 (D.P.R. July 15, 2009). Plaintiff was already granted leave to amend his complaint after his termination (Dockets No. 8, 9) and thus had ample opportunity to add a "regarded as" claim against WC, but failed to do so. (*See* Docket No. 11). Defendant's pleadings never treated plaintiff as having made a "regarded as" claim prior to plaintiff's summary judgment opposition. (*See* Docket No. 37, p. 3). Plain-

tiff has not introduced, and WC has not acquiesced in the introduction of, any evidence relevant only to the issue of whether WC regarded plaintiff as disabled. *See Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1172 (1st Cir.1995). I therefore recommend against denying summary judgment due to plaintiff's eleventh-hour claim.

■ Even if the court were to entertain plaintiff's new legal theory at this late stage, plaintiff has failed to produce evidence sufficient to establish a "regarded as" claim. In order to prevail, plaintiff must show that WC "mistakenly believed that [plaintiff had] a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities." *Martinez–Jordan v. Baxter Healthcare Corp.,* 608 F.Supp.2d 224, 243 (D.P.R. 2009) (citing *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139). It is insufficient for the plaintiff to show that the employer thought plaintiff was, in some way, impaired; rather, the plaintiff must show that the employer thought he was disabled "within the meaning of the statute." *Id.* at 243 (citation and quotation omitted). "[T]he Supreme Court has implied that regarded as claims under the ADA require an even greater level of specificity than other claims." *Ruiz Rivera,* 521 F.3d at 84 (citing *Sutton,* 527 U.S. at 489–91, 119 S.Ct. 2139). Therefore, to allege an actionable "regarded as" claim, a plaintiff must select and identify the major life activity that he will try to prove the employer regarded as being substantially limited by his impairment. *Id.* (citing *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139).

In his scanty treatment of his "regarded as" claim, plaintiff identifies "working" as the major life activity at issue and con-

170–71, 175 (D.P.R.2006), *aff'd,* 521 F.3d 76 (1st Cir.2008).

tends that Claudio and Lugo believed that plaintiff's hepatitis C condition substantially limited his ability to work. (Docket No. 46, p. 2–3). As evidence, plaintiff points to Claudio and Lugo's "constant[] ... comments" about plaintiff's hepatitis C condition and his requests for accommodation. (*Id.*). Though plaintiff fails to identify any particular remarks, the evidence shows that Claudio once said that plaintiff was at WC to do whatever she told him, whenever she told him, and once threatened to give plaintiff more work; and that Lugo once said that if plaintiff had a liver problem, he should not be working at WC because everything there was hormones.

■ These comments fall far short of the heightened level of specificity required for "regarded as" claims. It is well-established that stray workplace remarks, standing alone, cannot defeat summary judgment. *Rivera–Rocca*, 535 F.Supp.2d at 286; *Ruiz Rivera*, 521 F.3d at 87. In the context of a "regarded as" claim, such stray workplace remarks are insufficient to establish that an employer regarded an employee as a disabled individual as defined by the ADA. *Rivera–Rocca*, 535 F.Supp.2d at 286. Claudio's comments are too ambiguous and isolated to meet the high threshold for direct evidence, which "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." [19] *Patten v. Wal–Mart Stores E., Inc.*, 300 F.3d 21, 25 (1st Cir. 2002) (quotation and citation omitted). As to Lugo's remark, a decisionmaker's isolated comment about the impact of plaintiff's liver condition on his ability to work at a particular pharmaceutical plant does not show that Lugo thought plaintiff was disabled within the meaning of the statute.[20] *See Ruiz Rivera*, 521 F.3d at 86–87. Plaintiff's claim must fail for this reason alone.[21]

Furthermore, as discussed above, plaintiff was not disabled within the meaning of the ADA. Therefore, plaintiff was not entitled to an accommodation. WC's alleged refusal "to provide the accommodation that [plaintiff] sought, but to which [he] was not entitled, simply does not transform its actions into regarded as discrimination. Moreover, to allow this regarded as claim to stand would be tantamount to allowing [plaintiff's unavailing] failure to accommodate claim in through the back door." *Ruiz Rivera*, 521 F.3d at 86 (citing *Nuzum v. Ozark Auto. Distrib., Inc.*, 432 F.3d 839, 848–49 (8th Cir.2005)). Because there is insufficient evidence that WC regarded plaintiff as disabled within the meaning of the ADA, I recommend that, should the

19. As there is no strong circumstantial showing of "regarded as" discrimination in the case at bar, absent any evidence of who replaced plaintiff after his termination or of unfavorable treatment of plaintiff compared to other, non-disabled employees, I need not analyze whether plaintiff can prove his "regarded as" claim indirectly. *Patten*, 300 F.3d at 25 n. 1.

20. Lugo allegedly made the comment during his and Claudio's meeting with plaintiff about plaintiff's second written reprimand. Even assuming *arguendo* that this disciplinary meeting constitutes an "adverse employment action," "[a] decisionmaker's mentioning of a disability in the context of an adverse employment action cannot, without more, constitute direct evidence of discrimination." *Patten*, 300 F.3d at 25–26.

21. Plaintiff also, vaguely and for the first time, contends that he was discriminated against because WC regarded him as an individual with a disability within the meaning of the ADA due to his depression. (Docket No. 46, p. 2–3). Since plaintiff's only evidence is Claudio's ambiguous comment and Lugo's comment about plaintiff's liver condition, plaintiff's untimely attempt to allege a "regarded as" claim grounded in his perceived depression is unavailing.

court recognize plaintiff's "regarded as" claim, summary judgment be granted to WC.

## 2. Hostile Work Environment

Plaintiff asserts that due to his disability, WC subjected him to a hostile work environment created by the conduct of Claudio, Lugo, and Rosa. Plaintiff makes this claim for the first time in his opposition to WC's summary judgment motion. (Docket No. 46, p. 9–14). Plaintiff's amended complaint nowhere invokes a hostile work environment cause of action. (*See* Docket No. 11). For the same reasons discussed above, I recommend that the court not entertain a new claim brought at the summary judgment stage. Moreover, aside from two citations to plaintiff's statement of additional facts, plaintiff does not make any record citation to support this claim. This is insufficient to defeat summary judgment and violates Local Rule 56(e). *Matías–Cardona v. Verizon Wireless P.R., Inc.*, 610 F.Supp.2d 157, 170 (D.P.R.2009). Even if the claim is recognized, however, it cannot prosper.

This court has recognized a cause of action for disability-based hostile work environment under the ADA. *See Rodríguez v. Loctite P.R., Inc.*, 967 F.Supp. 653, 662–63 (D.P.R.1997); *Rodríguez Velázquez v. Autoridad Metro. de Autobuses*, 502 F.Supp.2d 200, 209 (D.P.R.2007); *Castro–Medina v. Procter & Gamble Commercial Co.*, 565 F.Supp.2d 343, 377–78 (D.P.R. 2008). The First Circuit has not explicitly ruled on whether such claims exist under the ADA, but has at least once assumed such claims to be cognizable. *See Rivera–Rodríguez v. Frito Lay Snacks Caribbean*, 265 F.3d 15, 23 (1st Cir.2001), *abrogated in non-relevant part by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Rocafort v. IBM Corp.*, 334 F.3d 115, 120–21

(1st Cir.2003) (reserving issue of whether ADA provides for such claims and holding any claim waived on appeal).

 In analyzing hostile work environment claims under the ADA, the court should borrow from the analysis of such claims under Title VII. *Loctite*, 967 F.Supp. at 662–63; *Rodríguez Velázquez*, 502 F.Supp.2d at 209. Accordingly, to prevail, the plaintiff must prove: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on his disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Rodríguez Velázquez*, 502 F.Supp.2d at 209 (citation and quotation omitted). The plaintiff must show that his workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Castro–Medina*, 565 F.Supp.2d at 377; *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Factors relevant to this inquiry include "the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance." *Castro–Medina*, 565 F.Supp.2d at 377; *Harris*, 510 U.S. at 23. The plaintiff must show further that the objectionable conduct was both objectively and subjectively offensive, that is, that plaintiff found the workplace environment hostile and that a reasonable person would as well. *Castro–Medina*, 565 F.Supp.2d at 378.

As discussed at length above, plaintiff has not established that he was disabled within the meaning of the ADA. As such, plaintiff cannot meet the first element of

the five-part test, *i.e.*, that he belonged to a protected group, and thus his claim must fail. *Castro–Medina*, 565 F.Supp.2d at 378 (plaintiff did not belong to a protected group because not a qualified individual with a disability under the ADA); *Rivera–Rodríguez*, 265 F.3d at 23 (affirming district court's grant of summary judgment on disability-based hostile work environment claim where plaintiff had not demonstrated that he was disabled). Even if plaintiff were statutorily disabled, he has not shown that Claudio, Lugo, and Rosa's conduct was sufficiently severe or pervasive as to alter the terms of his employment or to be objectively offensive. The evidence shows only three or four comments total by the named individuals. Plaintiff also points to Claudio's two written reprimands, but has introduced no evidence that they were unwarranted, as he does not dispute the underlying acts giving rise to the issuance of the reprimands. *See Castro–Medina*, 565 F.Supp.2d at 378; *Kosereis*, 331 F.3d at 217. I therefore recommend that if the court allows the claim, summary judgment for defendant should be granted.

### 3. Retaliation under the ADA

■ Pursuant to the ADA's anti-retaliation clause, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter." 42 U.S.C. § 12203. A plaintiff may assert a retaliation claim even if the underlying claim of disability fails. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "The First Circuit has analogized the ADA ... to the Title VII context" in retaliation causes of action.

*Arocho v. Dep't of Labor and Human Res.*, 218 F.Supp.2d 145, 148 (D.P.R.2002). To establish a *prima facie* case of retaliation, a plaintiff must prove by a preponderance of the evidence that (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. *See Dressler v. Daniel*, 315 F.3d 75, 78 (1st Cir.2003); *see also Soileau v. Guilford of Me.*, 105 F.3d 12, 13 (1st Cir.1997) (applying the standard for retaliation suit under Title VII to retaliation suit brought under the ADA). Requesting an accommodation is protected conduct for purposes of the ADA's retaliation provision, as is complaining about a refusal to accommodate. *Wright v. CompUSA, Inc.*, 352 F.3d 472, 477–78 (1st Cir. 2003); *Guzmán–Rosario v. United Parcel Serv., Inc.*, 397 F.3d 6, 11 (1st Cir.2005).

This *prima facie* case of retaliation has been described as a "small showing" that is "not onerous" and is "easily made." *Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir.2003). Once the plaintiff establishes a *prima facie* showing of retaliation, the burden-shifting analysis articulated in *McDonnell Douglas* applies. *See Calero–Cerezo*, 355 F.3d at 26. As previously discussed, under this framework, the defendant must articulate a legitimate and non-retaliatory reason for its employment decision. *Id.* If the defendant does so, the burden shifts to the plaintiff to show that "the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Id.* The *McDonnell–Douglas* burden-shifting scheme applies in particular to claims of retaliatory discharge. *See Higgins*, 194 F.3d at 262.

Plaintiff has met the first *prima facie* element by introducing evidence sufficient to support his claims that he requested reasonable accommodation and complained

to WC about the allegedly discriminatory acts taken against him.[22] For purposes of summary judgment, WC concedes that plaintiff engaged as well in the protected activities of filing the EEOC/ADU charge and the original complaint in the instant case. Under the second *prima facie* element, WC further concedes for summary judgment purposes that plaintiff suffered the adverse employment action of termination. Plaintiff also alleges the adverse employment actions of a hostile work environment, failing to accommodate plaintiff, giving him disadvantageous job assignments, disciplining him, and threatening to terminate him after the filing of the EEOC/ADU charge and the original complaint.

■ To establish the existence of an adverse employment action, the plaintiff employee must show that a reasonable employee would have found the challenged action materially adverse, meaning that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Carmona–Rivera v. P.R.*, 464 F.3d 14, 19 (1st Cir.2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). The alleged retaliatory action must be material, producing a significant, not trivial, harm. *Id.* "Adverse employment actions" include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 23 (1st Cir.2002) (quotation and citation omitted). "Determining whether an action is materially adverse necessarily requires a case-by-case inquiry. Moreover, the inquiry must be cast in objective terms. Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Blackie v. State of Me.*, 75 F.3d 716, 725 (1st Cir.1996).

Not all of plaintiff's allegations qualify as "adverse employment actions." Plaintiff alleges that Claudio, Lugo, and Rosa's actions created a hostile work environment, which can satisfy the adverse employment action requirement. *Quiles–Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir.2006). As discussed above, plaintiff has failed to establish a hostile work environment; therefore, plaintiff has not shown a materially adverse employment action on this ground. Plaintiff also alleges that he was given the disadvantageous job assignments of operating the shredder and collecting the bags of uniforms from inside the air lock. However, the evidence shows that operating the shredder had always been part of plaintiff's duties, and that WC moved the trash bags from inside to outside the air lock upon plaintiff's request; plaintiff's allegations thus do not make out an adverse employment action. Plaintiff further asserts that Rosa, Claudio, and Lugo "constantly" threatened to fire him due to the EEOC/ADU charge and the instant complaint. The evidence

---

**22.** Importantly, plaintiff's refusal to gather the bags of uniforms on June 5, 2007, which resulted in his second reprimand the following day, is not a protected activity. "[T]he right to oppose discrimination is not a right to refuse to work on account of discrimination. . . . [A] plaintiff goes beyond the scope of protected opposition when he damages the basic goals and interests of the employer, who has a legitimate interest in seeing that its employees perform their work well." *Hazel v. U.S. Postmaster Gen.*, 7 F.3d 1, 4 (1st Cir. 1993). The reprimand notes that gathering the bags was "part of [plaintiff's] job" and that such refusals "affect the good and normal functioning of the company." (Docket No. 43–7, p. 1).

shows only one particular comment by each of the three named individuals, all at indeterminate times. Lugo's and Claudio's comments have already been discussed. Rosa once threatened to fire plaintiff if Rosa caught him chatting with a coworker, instead of doing his work, again. Taken objectively, these three comments—even construing Lugo's and Claudio's comments, in plaintiff's favor, as veiled threats to fire plaintiff—do not rise to the level of material adversity.[23]

Plaintiff also claims that the two written reprimands constitute an adverse employment action. The reprimand for improper use of the time card system is not materially adverse. *See Juarbe–Velez v. Soto–Santiago*, 558 F.Supp.2d 187, 202 n. 2 (D.P.R.2008) (reprimand for not using a time clock was a "minimal" adverse employment action). However, plaintiff's second reprimand, citing plaintiff for insubordination, could be materially adverse in light of all the circumstances. Last, plaintiff claims it was an adverse employment action for WC to refuse his requests for accommodation; these failures to accommodate likewise could be materially adverse to a reasonable employee.

To complete his *prima facie* case, plaintiff must show a causal link between his protected activities and the adverse employment actions. Causation can be shown two ways: either (1) through direct evidence, *see Brasslett v. Cota*, 761 F.2d 827, 846–47 (1st Cir.1985), or (2) through very close temporal proximity between an employer's knowledge of the protected activity and the adverse employment action. *Calero–Cerezo*, 355 F.3d at 25 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). In this circuit, two months is considered sufficient to establish the "relatively light burden of establishing a prima facie case of retaliation." *Mariani–Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir.2007).

Plaintiff's case falters, but does not fall, on the causation element. Plaintiff's evidence is ambiguous about when he complained to WC that he was not being accommodated, so he cannot establish temporal proximity between his complaints and any particular adverse employment action. Moreover, there is no evidence that plaintiff engaged in a protected activity shortly before Claudio's issuance of the second reprimand or that WC took any adverse employment action shortly after plaintiff filed the EEOC/ADU charge. Furthermore, plaintiff alleges that he repeatedly asked WC for various accommodations, but the requests were never fulfilled—and "never" makes a denial difficult to pin down temporally. But even assuming temporal proximity between request and denial, in order to draw the inference of causation, " 'the adverse action must have been taken for the *purpose* of retaliating,' " and plaintiff has provided no evidence of a retaliatory intent associated with any failures to accommodate. *Carmona–Rivera*, 464 F.3d at 20 (citing *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir.1997)). Indeed, as WC points out, it *did* accommodate plaintiff by placing the bags of uniforms outside the air lock and granting plaintiff's requests for multiple lengthy medical leaves; also, during one of those leaves, WC ran the OEL test in the shredder area in response to plaintiff's concerns. These measures do not bear out plaintiff's allegations of constant pleas falling on deaf ears. "The fact that [plaintiff] was dissatisfied with the extent of many of

---

**23.** Indeed, plaintiff by his own admission "just let it go" when Claudio made her comment, showing that it produced at worst a trivial, not material, harm. (Docket No. 45–5, p. 18).

the ... accommodations does not prove a retaliatory intent on the part of [WC]. The fact remains that [WC] took steps to meet [plaintiff's] requests and did not stonewall [him]." *Id.* (holding that delay in granting accommodation requests was not an adverse employment action). Plaintiff thus has not established a *prima facie* case of retaliation through failure to accommodate his requests.

■ However, plaintiff does establish a *prima facie* case of retaliation by termination for filing the original complaint. The first evidence of WC's knowledge thereof is the January 22, 2008, service of process on Lugo as WC's agent. (*See* Docket No. 3). The time between service of process and plaintiff's termination is two months and six days: this is sufficient to raise an inference of causation. In turn, WC proffers a legitimate, non-retaliatory reason for the termination: that in contravention of WC's policies, plaintiff never called his supervisor about his absence during the period of March 24 through 28, 2008 and did not bring a medical certificate to the WC dispensary. WC asserts that the termination was a culmination of plaintiff's progressive discipline, including his prior reprimands and two performance reviews advising him that he needed to improve his work attendance.

■ At this point, the burden shifts back to plaintiff to show that WC's given reasons are merely pretext for retaliation. *See Mesnick*, 950 F.2d at 827–28. In assessing pretext, the court must look at the plaintiff's total package of proof, focusing on the decisionmaker's perception, *i.e.,* whether the employer believed its stated reason to be credible. *Id.* at 824 (citation and quotation omitted). "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not

only a sham, but a sham intended to cover up the employer's real motive." *Id.* (citation and quotation omitted).

While plaintiff introduces some competent evidence in rebuttal to WC's given reason for terminating him, it is still insufficient to establish pretext. Plaintiff points out that Lugo, the decisionmaker who terminated plaintiff, had made a remark about plaintiff's liver condition during plaintiff's second reprimand meeting, nine months prior to the termination. However, stray remarks in the workplace normally are insufficient to establish either pretext or discriminatory animus, particularly when temporally remote from the employee's termination. *Gonzalez v. El Dia Inc.,* 304 F.3d 63, 69 (1st Cir.2002) (citing *Domínguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 n. 6 (1st Cir.2000)). Plaintiff alleges that Betancourt e-mailed defendant's officers after plaintiff's termination about an alleged policy requiring a meeting prior to disciplinary action, and that no such meeting was held. But an employer's failure to follow its own policy does not show pretext absent proof that plaintiff was treated differently than other employees, and plaintiff has offered no such evidence. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 346 (5th Cir. 2007) (Title VII). Defendant, for its part, has presented evidence that plaintiff's annual reviews showed a decline in his job performance in several areas, including attendance; that he had been disciplined on multiple occasions for violations of WC's company policies and warned that further violations could result in his termination; and that plaintiff was familiar with the company's attendance policies. Defendant's asserted rationale for dismissing plaintiff has always remained consistent.

The parties dispute whether Torres told plaintiff he had to call his supervisor about

his absence,[24] and whether plaintiff returned to WC a second time with his medical certificate on March 28, 2008, or did not return until three days later. These disputed facts are not outcome-determinative and therefore are not material. Whether or not Torres advised plaintiff to contact his supervisor, plaintiff concedes that he did not do so. Also, whether plaintiff brought in his medical certificate before or after his termination, plaintiff's five-day absence without contacting his supervisor after undergoing multiple prior disciplinary actions provides a separate, undisputed reason to terminate plaintiff's employment. *See Dennis v. Osram Sylvania, Inc.,* 549 F.3d 851, 858–59 & n. 7 (1st Cir.2008). This holds true even if plaintiff had not been disciplined when, during prior absences, he had contacted only the nurses, not his supervisor, and not on a daily basis. *See Turner,* 476 F.3d at 346. The court "should exercise caution in second guessing [WC's] employment decisions. Courts should not act as 'super personnel departments,' substituting their judicial judgments for the business judgments of employers." *Id.* at 859 (citations and quotation omitted). Plaintiff has failed to raise any triable facts to demonstrate that WC's given reason was pretextual.

Based on the foregoing, I recommend that the court grant defendant's summary judgment motion as to plaintiff's ADA retaliation claim.

## C. Plaintiff's Puerto Rico Law Claims

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *Doral,* 57 F.3d at 1177. In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. *Id.; see also Rodríguez Cirilo v. García,* 908 F.Supp. 85, 92 (D.P.R.1995) ("The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. If federal law claims are dismissed before trial, however, the state law claims should also be dismissed.") (citations omitted). Because I recommend granting defendant's motion for summary judgment on all federal claims, I also recommend that this court decline to exercise supplemental jurisdiction over plaintiff's remaining Puerto Rico law claims.

## CONCLUSION

For the reasons stated above, I recommend that defendant's motion to strike be **granted** in part and **denied** in part. I further recommend that defendant's motion for summary judgment be **granted** as to all federal claims, and that the Puerto Rico law claims be **dismissed** without prejudice.

By order of the Court pursuant to Local Rule 72(d), the parties have **five (5) days** to file any objections to this report and recommendation. (Docket No. 56). Furthermore, the court has set aside the three-day term provided by Local Rule 5(e) (formerly Local Rule 5.1(e)) for time

---

**24.** Plaintiff alleges that on several previous occasions when he was absent, Claudio had contacted him in order to ask about his health and when he would return to work, and WC had not disciplined him. (Docket No. 45, ¶ 33). This allegation lacks any competent evidentiary support.

computation. (*Id.*). Failure to file objections within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *United States v. Valencia,* 792 F.2d 4 (1st Cir.1986).

**IT IS SO RECOMMENDED.**